356 A.2d 763

**BURNS MANUFACTURING COMPANY, INC.**

v.

**Joseph K. BOEHM and Alma G. Boehm, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 22, 1975.

Decided May 12, 1976.

308

Gerald A. McNelis, Jr., John P. Eppinger, Erie, for appellants.

John W. Beatty, Knox, Graham, Pearson, McLaughlin & Sennett, Inc., Erie, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

In 1974, appellee, Burns Manufacturing Company, attempted to exercise an option to purchase two lots of land currently leased by appellee from the owners, appellants Joseph and Alma Boehm. When appellants refused to convey the property, appellee instituted the instant equity action to compel specific performance. After a trial, the chancellor ordered appellants to convey a "free, clear and merchantable title," ruled that appellants had neither expressly nor impliedly reserved a right-of-way over the land, and concluded that under the terms of the option agreement, appellee was not required to pay interest charges which had accrued on money owed by appellants for the installation of certain sewer facilities on the lots in question. Appellants appealed. We conclude that appellants are entitled to retain a right-of-way over the easterly twenty feet of lots 275 and 276 and that the decree should be modified accordingly; as so modified, we will affirm.

(1) Appellants first contend that the chancellor erred in ruling that appellants are not entitled to retain a right-of-way over the lots which they have been ordered to convey. The reservation of such an easement, it is claimed, is both expressly set forth in the addendum clause of the lease granting the option, and implicit in light of the circumstances surrounding the transaction in question. An understanding of these contentions requires a brief review of the events which gave rise to this controversy.

In 1960 appellants purchased lot 285, a plot of land with a narrow forty foot southerly boundary on West 13th Street and one hundred-fifty-three foot westerly border on lots 275 and 276. (Lot 285 was bounded on the north and on the east by other properties not herein relevant). At the time of the purchase, a building thirty feet wide was situated on the southerly end of lot 285. Access to the northerly portion of the lot from West 13th Street could be gained only through a seven foot space which separated the western edge of this house and the border of lots 275 and 276.

Shortly after the purchase of lot 285, appellants began construction of a repair shop for automobile bodies on the northern portion of the lot. Because the seven foot passageway was not wide enough to allow necessary vehicles to reach the construction site, appellants, with the consent of the then owners, used the easterly twenty feet of lots 275 and 276 as an access route. In 1963, after the construction was completed, appellants purchased these two lots and paved the twenty foot access road. Two years later appellants agreed to lease the two lots to appellee, who drafted a lease containing an option to purchase the leased lots and a separate option to purchase lot 285. Appellants, however, concerned that the writing would not preserve their right to use the access road, refused to sign the lease agreement as drafted; they insisted, and the lessees agreed, that the following addendum be added prior to execution:

## "ADDENDUM

"17. The Lessors have the right to use the east one-half of Lot No. 276 for their exclusive parking purposes and the display of used cars. With the exceptions, however, of the easterly most twenty (20) feet which shall be left open as a driveway for the use of both the Lessors and the Lessee.

"18. The easterly most twenty (20) feet of Lot No. 275 shall at all times be open as a driveway to be used, jointly by the Lessors and the Lessee."

Appellants contend that these addendum clauses expressly reserve a 20 foot right-of-way for a driveway over lots 275 and 276, not only during the term of the lease, but also in the event that the option to purchase these lots is exercised. Appellee, on the other hand, asserts that the addendum clauses reserve the use of the right-of-way only for the duration of the lease, and do not by their terms relate to or affect the otherwise unqualified option to purchase.[1] The chancellor, noting that ambiguities in a lease are to be construed most strongly against the drafter, apparently concluded that the addendum clause did not give rise to an easement by express reservation.[2] The chancellor then went on to conclude that no easement by implication was established because appellant had failed to demonstrate that the right-of-way was actually or reasonably necessary for the enjoyment of his property.

1. The option agreement contained in the lease reads as follows:
"13. It is also specifically agreed between the parties hereto that the Lessee shall have the option to purchase the within described premises at any time during the term of this lease, including the renewal period, for the sum of Thirty-eight Thousand ($38,000) Dollars. If said option to purchase is exercised within the first five (5) year term, the Lessee is to be given a credit towards the purchase price equal to one hundred seventy ($170.00) dollars for each monthly rental payment that has been made. If said option to purchase is exercised during the renewal period of the lease, the one hundred seventy ($170.00) dollar per month credit shall only apply to rent which was paid during the first five (5) years term and shall not include credits for the renewal monthly rental payments. Should Lessee exercise the said option to purchase it will also pay in addition to the said Thirty-eight Thousand ($38,000.00) Dollar purchase price, less any applicable credit, the cost of the sanitary sewer installation on Filmore Avenue."

2. While the chancellor's opinion does not specifically mention the theory of "easement by express reservation," the frequent reference to the ambiguousness of the addendum suggests that the theory was rejected on the ground that ambiguities should be construed against the drafter.

■ The chancellor's conclusion that the addendum clauses did not expressly reserve an easement in favor of appellants is not free of difficulty.[3] We do not, however, choose to rest our decision on a review of this determination. Instead we conclude that circumstances of this case give rise to an easement by implied reservation relative to the easterly twenty feet of lots 275 and 276 for the benefit of the owners of lot 285.

■ It has long been held in this Commonwealth that although the language of a granting clause does not contain an express reservation of an easement in favor of the grantor, such an interest may be reserved by implication, and this is so notwithstanding that the ease-

3. The chancellor made no apparent attempt to construe the language of the addendum clause in light of the circumstances which surrounded its execution. Instead he appears to have relied on the apparent imprecision of the language as a sufficient basis to rule against appellant. *See* note 2 supra. This, in our view, is not a satisfactory approach to the construction of the facially ambiguous language contained in the addendum. While it is a well settled rule of construction that in cases of ambiguity, leases and grants should be construed most strongly against the drafter, *Baltic Development Co. v. Jiffy Enterprises*, 435 Pa. 411, 257 A.2d 245 (1969); *Heidt v. Aughenbaugh Coal Co.*, 406 Pa. 188, 192, 176 A.2d 400 (1963); *Sheffield Water Co. v. Elk Tanning Co.*, 225 Pa. 614, 623, 74 A. 742 (1909); it is equally clear that the rule is not intended as a talismanic solution to the construction of ambiguous language. Rules of construction serve the legitimate purpose of aiding courts in their quest to ascertain and give effect to the intention of parties to an instrument. They are not meant to be applied as a substitute for that quest. Where a document is found to be ambiguous, inquiry should always be made into the circumstances surrounding the execution of the document in an effort to clarify the meaning that the parties sought to express in the language which they chose. *See New Charter Coal Co. v. McKee*, 411 Pa. 304, 307, 191 A.2d 830 (1963); *Commonwealth v. Fitzmartin*, 376 Pa. 390, 393, 102 A.2d 893 (1954); *Weigand v. American Stores*, 346 Pa. 253, 256, 29 A.2d 484 (1943). It is only when such an inquiry fails to clarify the ambiguity that the rule of construction relied upon by the chancellor should be used to conclude the matter against that party responsible for the ambiguity, the drafter of the document. *See* A. Corbin, Corbin on Contracts § 559 (one vol. ed. 1953); Restatement of Contracts § 236(d) (1932). Because, however, we are able to decide the issue on the theory of easement by implied reservation there is no need to engage in an analysis of the language of the addendum.

ment is not essential for the beneficial use of the property.[4] See, e. g., *Tosh v. Witts*, 381 Pa. 255, 258, 113 A.2d 226 (1955); *Philadelphia Steel Abrasive Co. v. Gedicke Sons*, 343 Pa. 524, 528, 23 A.2d 490 (1942); *Nauman v. Treen Box Co.*, 280 Pa. 97, 100, 124 A. 349 (1924); *Liquid Carbonic Co, v. Wallace*, 219 Pa. 457, 459, 68 A. 1021 (1908); *Kieffer v. Imhoff*, 26 Pa. 438, 443 (1856). See also Restatement of Property § 476 (1944); Powell on Real Property § 411 (1975). The circumstances which will give rise to an impliedly reserved easement have been concisely put by Chief Justice Horace Stern speaking for the Court in *Tosh v. Witts*, supra:

> "[W]here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right of way." *Tosh v. Witts*, supra, 381 Pa. at 258, 113 A.2d at 228.

Each of these elements is present in the instant case.

■ First, the twenty foot access route is paved and has been used by appellants for the past fifteen years. Thus, there can be no question but that the right-of-way

4. Easements by implied reservation are to be distinguished from easements which are implied on the grounds of necessity. Powell on Real Property §§ 410–411 (1975). A right-of-way by necessity may be implied when "after severance from adjoining property, a piece of land is without access to a public highway. See *Soltis v. Miller*, supra [444 Pa. 357] at 359, 282 A.2d at [369] 370; *Borstnar v. Allegheny County*, 332 Pa. 156, 159, 2 A.2d 715, 716 (1938); Restatement of Property § 474 (1944)." *Bodman v. Bodman*, 456 Pa. 412, 414, 321 A.2d 910, 912 (1974). Such an easement can arise only upon a showing of "reasonable necessity." *Soltis v. Miller*, supra; and is not dependent upon a prior use of the land in an open, continuous and permanent manner. See Powell on Real Property § 411 (1975). Easements by implied reservation, on the other hand, are based on the theory that continuous use of a permanent right-of-way gives rise to the implication that the parties intended that such use would continue, notwithstanding the absence of necessity for the use.

is open and visible. Second, the right-of-way, having been regularly used, satisfies the requirement of continuity. "[A]n ordinary right-of-way, such as a road, a path or an alley, has been held to be continuous." *Nauman v. Treen Box Co.*, supra, 280 Pa. at 101, 124 A. at 350.[5] Finally, there is nothing in the circumstances of this case which would indicate that the access road in question was not intended to be permanent. See *Philadelphia Steel Abrasive Co. v. Gedicke Sons*, supra.[6] Accordingly, we conclude that the decree of the chancellor must be modified to allow for an easement in the nature of a right-of-way over and across the easterly twenty feet of lots 275 and 276 for the purpose of vehicular ingress and egress to and from the rear portion of lot 285.

5. The *Nauman* decision was overruled in part by *Philadelphia Steel Abrasive Co. v. Gedicke Sons*, 343 Pa. 524, 23 A.2d 490 (1942). In *Philadelphia Steel*, the Court rejected *Nauman's* restrictive reading of the permanency requirement of an implied easement by reservation. In *Nauman*, the Court held that where a right-of-way (a railroad siding) could be destroyed by the actions of a third party (the railroad company), over whom the proponent of the easement had no control, the right-of-way could not be said to be permanent. In *Philadelphia Abrasive*, the Court overruled this formulation and held that where there is nothing in the present circumstances to indicate that a right-of-way was intended to be nonpermanent, the potential of future disruption by the act of a third party does not destroy the permanence of the right-of-way for the purpose of finding an easement by implied reservation. The Court's decision left unaffected the *Nauman* conclusion that such rights-of-ways are continuous.

6. See note 5 supra. It should be noted that there is no language contained in the option agreement which would tend to negate the implication that the right-of-way in question was intended to continue in existence after the exercise of the option. *See* note 1 supra. Appellee, the drafter of the option agreement, certainly could have included such language had it so desired. Moreover, even if the addendum clauses are considered to be too ambiguous to create an easement in the lessor-vendor after sale, they cannot reasonably be read as declaring an intent that the right-of-way should terminate upon the exercise of the option. It is true, as the chancellor's opinion points out, that the parties are referred to in those paragraphs as "Lessors" and "Lessee," not as parties to a sale, but this is the terminology used throughout the instrument (which was, of course, primarily a lease), including the option paragraphs (13 and 14).

■    (2) Appellant next contends that the chancellor erred in concluding that appellee was not required to pay the interest accruing on a sewer lien on the optioned premises as part of the cost of the sanitary sewer installation agreed to be paid by appellee. At issue is the construction to be afforded that portion of the option agreement which provides that appellee, if the option is exercised, shall bear the "cost of the sanitary sewer installation." See n. 1, supra. The chancellor concluded that the quoted phrase embraced only the cost of installation as such, not the interest that accrues on the unpaid balance of the installation cost. Such a construction is not without support. See e. g., Black's Law Dictionary 415 (4th ed. 1968). Appellant contends, however, that the term is intrinsically ambiguous and ought to be construed in light of the circumstances surrounding its adoption. Even assuming, however, that the term "cost of . . . installation" should be so construed, the record does not contain sufficient evidence of those circumstances to undermine the chancellor's conclusion that "interest" was not within the contemplation of the parties when they entered into the lease agreement. Accordingly, we will affirm the chancellor's decree in this regard.

Decree modified in accordance with this opinion and, as so modified, is affirmed. Each party to bear own costs.