616 A.2d 1364

William H. GABEL and Karen L. Gabel, his wife, Appellants,

v.

Andrew J. CAMBRUZZI and Rita Cambruzzi, his wife; Darragh Civic Association; Jerry L. Steiner and Gloria F. Steiner, his wife; and David W. Cambruzzi and Sherry S. Cambruzzi, his wife, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 25, 1990.

Decided Nov. 13, 1992.

Bruce E. Mattock and Jon M. Lewis, Greensburg, for appellants.

Thomas J. Godlewski, Godlewski & Hewitt, Greensburg, for Darragh Civic Ass'n, Andrew J. Cambruzzi, et ux., and David W. Cambruzzi, et al.

Richard H. Galloway, Greensburg, for Jerry L. Steiner, et ux.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

The appellants herein, William and Karen Gabel, own a large tract of land, consisting of over seventeen acres, in the village of Darragh, Westmoreland County, Pennsylvania.

In or about 1890, a dam was constructed on the property now owned by the appellants for the purpose of retaining the stream which ran through the above-mentioned tract on its way to joining the Little Sewickley Creek. It was built to supply water for the nearby village of Darragh.

In the mid 1940's, large cracks began to develop in the bed of the artificial lake, causing water to leak into abandoned deep mines underneath the lake. The appellants claim to have been contacted by various governmental agencies, including the Rural Abandoned Mine Program of the Soil Conservation Service of the U.S. Department of Agriculture, regarding the health and safety problems created by the pollution of the underlying water sources and subsidence of surrounding land.

To abate the problem, appellants could either seal the cracks in the bed of the lake leading to the deep mine or dismantle the dam and spillway and return the stream to its natural water course. The consequence of either remedy would be that water would begin to flow downstream again, for at least a short time.

Appellees are owners of several parcels of land lying between appellants' land and the Little Sewickley Creek. The natural water course of the stream, retained since 1890, runs through the appellees land. The former owner of appellees' land, a railroad company, built a culvert to contain and transport the flow of water in the old natural water course as it passed through its land. This culvert has since been sealed off. If the dam were to be breached and the culvert not reopened, the water would have to cut a new channel on its way downstream to the Little Sewickley Creek.

In the Court of Common Pleas of Westmoreland County, appellants sought the declaration of a 50 foot wide permanent easement and a 100 foot wide construction easement in favor of the U.S. Department of Agriculture, Soil Conservation Service, over the lands of appellees which would allow them to reestablish the old natural water course by re-opening the culvert. In the alternative, appellants sought a declaration that they were "upper riparians" so that appellees would have the burden of providing a course for the stream and appellants would not be responsible for any resulting damage.

The trial court sustained appellees' preliminary objection in the nature of a demurrer finding that the appellant had not pleaded facts sufficient to support a cause of action in easement by grant, implication, or prescription. The court noted that even if appellants had established an easement, the construction of the dam by appellants' predecessors in interest constituted abandonment of that interest. The court, however, did not directly address appellants' easement argument based on riparian rights. The Superior Court affirmed the judgment of the lower court, concluding that any claim of easement or prescriptive easement must fail because the evidence established that no water had flowed past the dam since 1945. 385 Pa.Super. 660, 555 A.2d 252 (1988).

Appellants here raise two arguments in support of their case. First, as upper riparians, they possess an inalienable right to breach the dam situated on their property whenever it is no longer beneficial "to the upper riparian as well as to the public in general." Appellants' Brief at p. 8. Second, appellants raise an argument based on the deeds by which appellees, or their predecessors in title, took their land. They contend that all parties involved took title to their properties *after* construction of the dam. Thus, they argue, there was "constructive, if not actual, notice as to the possibility of the re-establishment of the old natural water course should the dam become breached." Appellants' Brief at p. 9. Additional evidence of notice, they allege, is found within the deeds by which the lower land owners and their predecessors in title took their parcels. Appellants also stress that they are seek-

ing relief not merely for their own benefit but to alleviate a serious health threat caused by the pollution of the neighboring water sources.

Appellees counter these arguments by firmly denying the existence of an easement and then suggesting that, even if there *had been* an easement over their lands, since the flow was diverted at the turn of the century, appellants and their predecessors in title effectively abandoned any such right.

The issue of whether an upper riparian who has stopped the flow of water has a perpetual right to restart the flow is one of first impression for this Court. Nonetheless, for the reasons that follow, we hold that the Superior Court erred in affirming the trial court's decision to sustain preliminary objections in the nature of a demurrer, and we hereby remand the case for a trial.

■ In reviewing a demurrer, the receiving court must accept the facts and all reasonable inferences drawn therefrom of the party against whom the motion is granted. As we stated in *Muhammad v. Strassburger,* 526 Pa. 541, 547, 587 A.2d 1346, 1349 *reh'g denied,* 528 Pa. 345, 598 A.2d 27, *and cert. denied,* —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991):

> 'All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960).'

*Id.* (quoting *Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 244, 465 A.2d 1231, 1232–33 (1983)). In light of the facts alleged by the appellants in this case we cannot conclude that the law says with certainty that no recovery is possible.

Therefore, we must reverse the grant of the demurrer and remand this matter to the trial court for a trial on the merits of the appellants' complaint.

■ Appellants allege that the deed to David and Sherry Cambruzzi's property contains an express easement for drainage from the dam.[1] If the deed contains such a provision, (and that is a fact that must be established at trial), then the fact that the water has stopped flowing over the dam and instead flows into abandoned mines does not show appellants' intent to abandon the easement. It cannot be said that appellants intended the water to leak into the mines.

■ This Court has recognized the following test to show abandonment:

> [T]he law requires that there be showing of *intent of the owner of the dominant tenement to abandon* the easement, coupled with either (1) adverse possession by the owner of the servient tenement; or (2) affirmative acts by the owner of the easement that renders the use of the easement impossible; or (3) obstruction of the easement by the owner of the easement in a manner that is inconsistent with its further enjoyment.

*Ruffalo v. Walters*, 465 Pa. 236, 238–39, 348 A.2d 740, 741 (1975) (emphasis added). In the instant case, the threshold test for finding abandonment of the easement is a showing of intent of the owner of the dominant tenement. Nonuse alone will never establish intent to abandon an easement. *Stozenski v. Borough of Forty Fort*, 456 Pa. 5, 317 A.2d 602 (1974); *Hatcher v. Chesner*, 422 Pa. 138, 221 A.2d 305 (1966) ("[m]ere nonuse, no matter how long extended, will not result in extinguishment of an easement created by deed"); *Eagan v. Nagle*, 378 Pa. 206, 212, 106 A.2d 222, 225 (1954) ("mere nonuser [sic] will not constitute an abandonment of an easement established by deed"). Here, the nonuse of the spillway is a result of the cracks in the mines which caused the water to flow into the mines rather than over the spillway. A natural occurrence of this nature cannot be said to show the

1. The complaint refers to a spillway which, we can only surmise, carried water over the dam and through the appellee's land.

appellants' intent to abandon their easement for drainage through the appellees' land.

The trial court opined that there was no evidence of any easement; additionally it held if there was an easement, it has been extinguished by abandonment. However, the trial court and the Superior Court misapplied our test set forth in *Ruffalo v. Walters*, 465 Pa. 236, 348 A.2d 740 (1975).

■ The Superior Court stated that, "abandonment can be established" and that "intent to abandon may be inferred by the construction and continued presence of the dam." *Gabel v. Cambruzzi*, No. 1553 Pittsburgh 1987, slip op. at 3–4 (Pa. Superior Court, Nov. 21, 1988) [385 Pa.Super. 660, 555 A.2d 252 (Table)]. However, it was not the construction and continued presence of the dam which prevented the flow of water through appellees' land but was actually the cracks in the lakebed which carried water into the abandoned mines. Thus, if there is abandonment, it occurred long after the dam was built.

■ The second issue raised by appellants is the right of an upper riparian owner to breach a dam on his property and restore the flow of water in its original watercourse. The trial court did not address this issue at all. The Superior Court, after noting that the trial court "did not directly address appellants' theory of easement based on riparian rights," stated that the "dam owners have abandoned a right which they and their predecessors initially had." Slip op. at 5.

We have stated:

A landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition. One may make improvements upon his own land, especially in the development of urban property, grade it and build upon it, without liability for any incidental effect upon adjoining property even though there may result some additional flow of surface water thereon through a natural

watercourse, but he may not, by artificial means, gather the water into a body and precipitate it upon his neighbor's property.

*Rau v. Wilden Acres, Inc.*, 376 Pa. 493, 494, 103 A.2d 422–423 (1954), *quoted in Westbury Realty Corp. v. Lancaster Shopping Center, Inc.*, 396 Pa. 383, 387, 152 A.2d 669, 671–72 (1959). It is impossible to apply this precedent to the instant matter, however, because this record does not disclose if any water is presently passing through the appellees' property, nor does it reflect how much water would be passing through their property after the dam is breached.

In *Alburger v. Philadelphia Electric Co.*, 112 Pa.Commw. 441, 535 A.2d 729 (1988), the Commonwealth Court reversed the Court of Common Pleas and enjoined the Electric Company from increasing the flow of water through lower riparian owners' lands. The Commonwealth Court held that "the owners of servient estates [,] have the right to seek to enjoin a dominant owner from enlarging *from a foreign source* the existing flowage easement and increasing the burden on their lands." *Id.* at 449, 535 A.2d at 732 (emphasis added). Evidence had been introduced at trial of the increase in flowage as well as the sources and uses of the increased water. No facts such as those are before this Court; therefore, we cannot make a determination of the respective rights of the parties. In this case, the water is not from a foreign source but instead is water that has accumulated on appellants' property and now perhaps creates a grave health risk.

One cannot help but ask, where is the flow of water at present? Surely it is not being completely contained by the dam. The complaint refers to a spillway. The nature of this spillway is not fully explained. These and other questions must be answered in an adversarial fact finding trial, not on appeal with only an inadequate record. The appellant must be given the opportunity to present the evidence available and the appropriate place is in the Court of Common Pleas.

According to Rule 1028(c)(2) of the Pennsylvania Rules of Civil Procedure, when ruling on preliminary objections, the court shall consider evidence "by depositions or otherwise."

*Id.* However, there is no indication in the record, or in the opinion of the court below, that any fact finding occurred at the preliminary stages of this matter, despite the obvious factual inconsistencies between the amended complaint and the preliminary objections. The court below improperly granted the appellees' preliminary objection in the nature of a demurrer.

While it is true that the issue of a property owner breaching a dam on his own property and thereby creating a stream through his neighbors' property is one of first impression for this Court, we do not have enough facts before us to provide anything other than an advisory opinion. This Court will not break its tradition of refusing to author advisory opinions. We reverse the grant of a demurrer and remand the matter to the Court of Common Pleas for a trial on the merits.

The late Justice McDERMOTT did not participate in the decision of this case.