Donald A. DADDONA and Eva
M. Daddona, Appellees,

v.

Joe L. THORPE and Linda
Thorpe, Appellants.

v.

Frederick D. Burton and Dorothy
O. Burton, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 6, 1999.

Filed March 14, 2000.

Emil W. Kantra, II, Center Valley, for appellants.

Charles V. Curley, King of Prussia, for Donald and Eva Daddona, appellees.

Before DEL SOLE, HUDOCK and BECK, JJ.

HUDOCK, J.:

¶ 1 Joe and Linda Thorpe (the Thorpes) appeal from the final decree entered by the trial court, which, *inter alia,* permanently enjoined them from erecting a fence or other obstruction over a common paved driveway. We affirm.

¶ 2 The factual findings of the court below, as well as the procedural history of the instant litigation, can be summarized as follows: Donald and Eva Daddona (the Daddonas) presently reside at 321 East Emmaus Avenue in Allentown, Lehigh County (the Daddona property). The Thorpes presently reside at 333 East Emmaus Avenue (the Thorpe property). Frederick and Dorothy Burton own the property located at the rear of 321 East Emmaus Avenue (the Burton Property). All three properties are contiguous. The Daddona property is located to the west of the Thorpe property and to the south of the Burton Property. Emmaus Avenue is an east-west road that is located to the south of the properties. Slate Alley is situated to the immediate north of both the Thorpe and Burton properties.

¶ 3 On February 27, 1919, Howard F. Frey acquired title to all three properties by way of a deed recorded in the Office of the Recorder of Deeds of Lehigh County. On September 26, 1966, Virginia Daddona acquired title to what is now the Thorpe property from Helen Pivilinsky. At the time of this acquisition, there was a stone driveway that had been in that location since at least 1916, running from Emmaus Avenue and providing access to all three properties, across Trout Creek, to Slate Alley. This same driveway is at issue in the present case. At the present time, the driveway is now paved and connects Emmaus Avenue with Slate Alley.

¶ 4 At the time Virginia Daddona acquired title to the Thorpe property, Nina Creveling Christine owned both the Daddona and Burton properties. The Christines used the driveway at issue to access their home on the Daddona property. Until 1980, the driveway between the Thorpe and Daddona properties was known as "Christine Lane". Virginia Daddona never gave permission to anyone to use Christine Lane because she believed it was for her use and that the common paved driveway would serve all three properties. Indeed, since 1966, the respective owners and visitors to all three properties have utilized the existing driveway as a means of ingress and egress.

¶ 5 On November 14, 1968, Nina Creveling Christine conveyed what is now the Burton property and the Daddona property to the Daddonas, along with Donald's brother Anthony Daddona, and his wife Virginia. (This is the same Virginia who, since 1966, held title to the Thorpe property). By way of deed dated May 12, 1988, Donald and Eva Daddona acquired sole title to the Daddona property from themselves and Anthony and Virginia Daddona. From 1968 to present, Donald and Eva Daddona live in a house on the Daddona property that has been located there since at least 1916.

¶ 6 Anthony and Virginia Daddona never lived at the residence located on the Daddona property, nor maintained it. Moreover, they did not make payments on the mortgage on the Daddona property and their names appeared in the Daddona chain of title as a mere accommodation. Since 1968, the Daddonas have maintained and repaired the driveway at issue, including paving and patching, removing tree limbs, plowing snow, and raking leaves. In addition, the Daddonas have continuously, on a daily basis, used the driveway to access the Daddona property.

¶ 7 As a result of a flood in 1972, the driveway's bridge across Trout Creek was washed out and Donald and Anthony Daddona replaced the original wood and steel bridge with a concrete bridge and repaved the driveway. Also in 1972, Donald Daddona built the original porch and sidewalk leading to the existing driveway from his residence on the Daddona property. In 1995, Donald Daddona made substantial improvements to the sidewalk.

¶ 8 On or about January 23, 1980, the Daddonas, together with Anthony and Virginia Daddona, by deed conveyed to Gene J. Riggins (Riggins) land now known as the Burton property. At the time of this conveyance, there was a structure on the

property, which had been used as a business office for a contracting business operated by the Daddona brothers. Prior to the time of the conveyance of what is now the Burton property, the property owned by the Daddona couples abutted both Emmaus Avenue, a public road on the southern border of the property and Slate Alley, an alley on the northern border of the property which had been laid out as a public alley on the Plan of Overlook Terrace, but not accepted as a public alley. As a result of the transfer of the Burton property to Riggins, the Daddona property no longer abutted Slate alley.

¶ 9 In order for the Daddonas to transfer the Burton property to Riggins, it was necessary for them to obtain subdivision approval from Salisbury Township, the municipality in which the subject properties are located. As part of the subdivision approval process, Salisbury Township required the Daddona couples, Riggins, and the Bank of Pennsylvania, in its capacity as mortgagee to Riggins, to enter into a sewer easement and right of way agreement. The parties to the Burton property conveyance entered into a sewer easement, which was duly recorded, on or about January 24, 1980. The sewer easement depicts an "existing driveway" running from Emmaus Avenue on the Thorpe property, through that property, to Slate Alley, together with a bridge spanning Trout Creek and a "proposed 25' drive" running from Emmaus Avenue immediately adjacent to the western side of the existing driveway in the area between Emmaus Avenue and Trout Creek, stopping before reaching Trout Creek. The proposed driveway was not meant to provide access to the residence on the Daddona property, but rather, was contemplated to provide access to a future subdivision of the portion of the Daddona property that borders on Emmaus Avenue. The proposed driveway does not coincide with the boundaries of the right of way agreement entered into by the parties to the Burton property conveyance.

¶ 10 On or about January 24, 1980, the parties to the Burton property conveyance entered into a right of way agreement. At that time, the parties to the right of way agreement believed that the existing driveway, which was actually completely on the Thorpe property, ran along the boundary line between the Thorpe and Daddona properties.[1] The parties to the right of way agreement did not have a survey completed prior to entering into the agreement. The right of way area described in the agreement is contiguous, but not identical to, the driveway, which existed on the Thorpe property in 1968 when Nina Creveling Christine conveyed what is now the Daddona and Burton properties to the Daddona couples. As described in the right of way agreement, the right of way would pass within approximately two feet from the home of the Daddonas.

¶ 11 The parties to the right of way agreement directed its scrivener, Harry Creveling, now deceased, to prepare a right of way agreement which would describe the metes and bounds of the right of way in a manner consistent with the existing driveway so that all of the parties, their heirs and assigns, would have the benefit of using the existing driveway. The intent of the parties was to have a twenty-five foot easement, twelve and one-half to both the east and west of the existing driveway. The parties to the right of way agreement intended to grant the residences on the Daddona, Burton, and Thorpe properties the use of the existing driveway.

¶ 12 In approximately 1988, the Daddonas repaved the driveway between the Daddona and Thorpe properties. In 1993, the Burtons acquired title to the Burton property. Dr. Burton is a medical doctor who operates his practice out of a structure on the property.

---

1. In response to post-trial motions, the court below "rescinded" this factual finding; it nevertheless found that this change in the facts did not alter its ultimate conclusion.

¶ 13 From 1966, when Virginia Daddona acquired the Thorpe property, until October 8, 1981, when she conveyed the Thorpe property to Riggins, Virginia and Anthony Daddona maintained their residence at the Thorpe property in the single-family dwelling that is located on the property, and that had been located on the property since at least 1916. During the time that the Riggins owned the Thorpe property, and continuing during their ownership of the Burton property, Mrs. Riggins [2] saw vehicular traffic access the Daddona and Burton properties by utilizing the paved driveway.

¶ 14 Joe and Linda Thorpe acquired the Thorpe property on March 9, 1989, by way of a deed from the Riggins. The Thorpes did not have a survey conducted when they purchased the Thorpe property. Thus, at the time of their purchase, they did not know where their property line was or on whose property the driveway was located.

¶ 15 In June of 1997, the Burtons had a survey of the driveway conducted. After reviewing the results of this survey, the Thorpes had another survey conducted. Upon learning the results of this second survey, the Thorpes erected a chain-link fence across the existing driveway, blocking the access of both the Daddonas and the Burtons. The Thorpes were aware that the Daddonas and the Burtons used the driveway as a means of accessing their properties, but did not object to their use of the driveway until after the property was surveyed. The existing driveway was freely and openly utilized by all three families and their predecessors-in-interest in excess of twenty-one years. Pending the resolution of the instant litigation, the Daddonas and the Burtons have received the permission of the individual landowners that own Slate Alley to use that route to access their respective properties.

¶ 16 In order to build another bridge across Trout Creek, the Daddonas and the Burtons would have to obtain permits from various agencies, including the Department of Environmental Regulations, the Army Corps of Engineers, the Delaware River Basin Authority, Salisbury Township, and the Pennsylvania Game Commission. The financial cost of building another bridge over Trout Creek and paving an additional driveway would be approximately $33,000.00 to $35,000.00. In addition, an existing swimming pool and trees may have to be removed in order to construct a driveway to provide access to the Daddona and Burtons properties via Emmaus Avenue.

¶ 17 On or about October 28, 1997, Donald and Eva Daddona commenced an equity action by filing a complaint and request for special injunctive relief, i.e., to have the Thorpes remove the fence they erected over the driveway. Thereafter the court issued a rule upon the Thorpes to show cause why a preliminary injunction should not be granted, and scheduled a hearing for November 3, 1997. On that date, the Honorable Edward D. Reibman heard testimony on the request for special injunctive relief and, on January 6, 1998, granted a preliminary injunction.

¶ 18 A non-jury trial was commenced on February 23–24, 1998, before the Honorable Lawrence J. Brenner. Thereafter, on July 16, 1998, Frederick and Dorothy Burton filed a petition to intervene, which was granted. The non-jury trial resumed on November 5, 1998, including a view of the properties. Testimony in the instant litigation concluded on December 7, 1998.

¶ 19 Based upon the factual findings summarized above, the court, by an adjudication dated February 24, 1999, made the following conclusions of law: 1) the Daddonas have an easement by implication over the existing paved driveway; 2) the Burtons have an easement by implication over the existing paved driveway; 3) a mutual mistake existed in the execution of the right of way agreement, in that the parties to the agreement intended to include the

**2.** Mr. Riggins is deceased.

existing driveway within the metes and bounds of the right of way described in the agreement; thus, the court stated that the agreement must be reformed to reflect the intent of the parties; 4) the Daddonas have not abandoned the right of way created by the right of way agreement; and 5) the Burtons have not abandoned the right of way created by the right of way agreement.

¶ 20 The Thorpes filed post-trial motions to the court's adjudication. The court denied these post-trial motions. As noted *infra*, however, the court did rescind its factual finding that the parties to the right of way agreement were mutually mistaken as to the boundaries of the respective properties. Nevertheless, the court also found that the rescission of this fact did not affect its adjudication and decree. The court therefore entered a final decree in which it, *inter alia*, permanently enjoined the Thorpes from erecting a fence or other obstruction over the common paved driveway.

¶ 21 In their appeal from the final decree, the Thorpes raise the following issues:

A. DID THE LOWER COURT ERR IN CONCLUDING THAT AN EASEMENT BY IMPLICATION EXISTED OVER THE THORPE PROPERTY FOR THE BENEFIT OF THE DADDONA AND BURTON PROPERTIES?

B. DID THE LOWER COURT ERR IN REFORMING THE RIGHT OF WAY AGREEMENT BETWEEN THE ORIGINAL OWNERS OF THE DADDONA, THORPE AND BURTON PROPERTIES AND THEIR MORTGAGEE TO ENCOMPASS THE PAVED DRIVEWAY ON THE THORPE PROPERTY?

C. DID THE LOWER COURT ERR IN DISMISSING [THE THORPES'] ABANDONMENT CLAIM?

D. DID THE LOWER COURT ERR IN DISMISSING [THE THORPES'] EJECTMENT ACTION?

Thorpes' Brief at 5.

¶ 22 Initially, we note our scope of review in equity actions:

"The trial judge, sitting in equity as a chancellor, is the ultimate fact-finder. The scope of review, therefore, is limited. The final decree will not be disturbed unless the chancellor committed an error of law or abused his or her discretion. The findings of fact made by the trial court will not be disturbed unless they are unsupported by competent evidence or are demonstrably capricious."

*King v. Rock*, 415 Pa.Super. 605, 610 A.2d 48, 49 (1992) (quoting *Roberson v. Davis*, 397 Pa.Super. 292, 580 A.2d 39, 40 (1990)) (citations omitted).

¶ 23 The Thorpes first claim that the court below erred in concluding that an easement by implication existed over their property for the benefit of the Daddona and Burton properties. We cannot agree.

¶ 24 In *Burns Manufacturing v. Boehm*, 467 Pa. 307, 313–14, 356 A.2d 763, 767 (1976), our Supreme Court stated:

It has long been held in this Commonwealth that although the language of a granting clause does not contain an express reservation of an easement in favor of the grantor, such an interest may be reserved by implication, and this is so notwithstanding that the easement is not essential for the beneficial use of the property. *See, e.g., Tosh v. Witts*, 381 Pa. 255, 258, 113 A.2d 226 (1955); *Philadelphia Steel Abrasive Co. v. Gedicke Sons*, 343 Pa. 524, 528, 23 A.2d 490 (1942); *Nauman v. Treen Box Co.*, 280 Pa. 97, 100, 124 A. 349 (1924); *Liquid Carbonic Co. v. Wallace*, 219 Pa. 457, 459, 68 A. 1021 (1908); *Kieffer v. Imhoff*, 26 Pa. 438, 443 (1856). See also Restatement of Property § 476 (1944); Powell on Real Property § 411 (1975).

The circumstances which will give rise to an impliedly reserved easement have been concisely put by Chief Justice Horace Stern speaking for the Court in *Tosh v. Witts, supra*:

"[W]here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden of the benefit as the case may be, and this is irrespective of whether or not the easement constituted a necessary right of way." *Tosh v. Witts, supra,* 381 Pa. at 258, 113 A.2d at 228.

*Burns,* at 313, 356 A.2d at 767 (footnote omitted). In a footnote, our Supreme Court in *Burns*noted that easements by implied reservation are to be distinguished from easements that are implied on the grounds of necessity. A right of way by necessity may be implied when "after severance from adjoining property, a piece of land is without access to a public highway." *Id.* at 313 n. 4, 356 A.2d at 767 n. 4. However, such an easement can arise only upon a showing of "reasonable necessity", and is not dependent upon a prior use of the land in an open, continuous, and permanent manner. *Id.* Contrarily, easements by implied reservation are based upon the theory that "continuous use of a permanent right-of-way gives rise to the implication that the parties intended that such use would continue, notwithstanding the absence of the necessity for the use." *Id.*

¶ 25 In *Mann–Hoff v. Boyer,* 413 Pa.Super. 1, 604 A.2d 703 (1992), this Court stated:

Although the [Supreme Court's discussion in *Burns* ] conveys a brief summary of the concept of easement by implication, other Pennsylvania cases not cited by the trial court provide a much more detailed description of this concept. We find the following statement of the proper method of analyzing

a claim of easement by implication particularly elucidating:

In deciding whether an easement has been created by implication, the Pennsylvania courts have used two different tests, the traditional test and the Restatement test.

The traditional test has been described as follows: "Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate; first, a separation of title; second, that, before the separation takes place, the use which gives rise to the easement, shall have been so long continued, and so obvious or manifest, as to show that it was meant to be permanent; and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these three, another essential element is sometimes added,—that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time."

[*Becker v. Rittenhouse* ], [297 Pa. 317] at 345, 147 A. [51] at 53. *See also DePietro v. Triano,* 167 Pa.Super. 29, 31–32, 74 A.2d 710–11 (1950).

The view expressed in the RESTATEMENT OF PROPERTY § 474 [sic] and expressly adopted in Pennsylvania in *Thomas v. Deliere,* 241 Pa.Super. 1, 359 A.2d 398 (1976), "emphasizes a balancing approach, designed to ascertain the actual or implied intention of the parties. No single factor under the Restatement approach is dispositive. Thus, the Restatement approach and the more restrictive tests … co-exist in Pennsylvania." *Id.* at 5 n. 2, 359 A.2d at 400 n. 2. *See also Lerner v. Poulos,* 412 Pa. 388, 194 A.2d 874 (1963); *Schwoyer v. Smith,* 388 Pa. 637, 131 A.2d 385 (1957); *Spaeder v. Tabak,* 170 Pa.Super. 392, 85 A.2d 654 (1952).

*Mann–Hoff,* 604 A.2d at 706–07. *See also Possessky v. Diem,* 440 Pa.Super. 387, 655 A.2d 1004 (1995). In a footnote, the *Mann–Hoff* court further noted that the discussion in *Burns* did not require that the proponent of an easement by implication show that the claimed easement was "necessary". *Id.* at 708 n. 4. The court further stated:

> This appears to conflict with other statements of the traditional test and with the Restatement test, both of which include necessity of the easement to the beneficial enjoyment of the property as a crucial factor in the analysis. One recent case has attempted to resolve this disparity. In *Hann v. Saylor,* 386 Pa.Super. 248, 562 A.2d 891 (1989), the court noted that those formulations of the traditional test that do require a showing of necessity do not mean to require a showing of "absolute necessity," but rather require only that the claimed easement be shown to be convenient or beneficial to the dominant estate. *Id.* at 251, 562 A.2d at 893 n. 1 The *Hann* court further opined that where necessity is shown, this argues in favor of recognition of an implied easement.

*Mann–Hoff,* 604 A.2d at 708 n. 4.

¶ 26 Our Supreme Court's most recent discussion of easements by implication at severance of title appears in *Bucciarelli v. DeLisa,* 547 Pa. 431, 691 A.2d 446 (1997). In *Bucciarelli,* Maxine Keene, in 1986, conveyed a twenty-acre parcel of lakeside land to her son Raymond Keene. Mrs. Keene retained ownership of other land on the lake, which she subdivided into four lots. On these lots were cottages which, over the years, the Keene family had rented to others. In 1987, with Raymond's assistance, Mrs. Keene submitted a subdivision plan to the county planning commission. This plan indicated that access to the four properties comprising the subdivision would be via an existing road (Cottage Road) that traversed the twenty-acre tract that she had conveyed to Raymond the year before. Upon approval of the subdivision plan, Mrs. Keene sold the four lots.

¶ 27 In 1988, Raymond conveyed his twenty-acre tract to Al DeLisa. For approximately ten years prior to this purchase, DeLisa lived across the lake from and within sight of the Keene subdivision, and, in order to get to his house, he drove over an access road, which intersected Cottage Road. Neither Mrs. Keene's deed to Raymond nor Raymond's deed to DeLisa indicated that an easement was reserved. Subsequently, DeLisa blocked Cottage Road even though it had been used for access to the lakeside lots within the Keene subdivision. Thus, the owners of the lakeside lots sought injunctive relief against DeLisa.

¶ 28 The trial court held that DeLisa had constructive notice of the easement by way of the recorded subdivision plan, as well as the planning commission records with regard thereto, which made reference to a fifty-foot-wide right of way along an existing private road that had been approved to serve a previous lakeside subdivision in 1971. The trial court also found that DeLisa had actual notice of the right of way. The court based its decision upon the theory that the recorded subdivision plan created an easement by implication, but further noted that an easement by implication appeared to have been created by severance of title.

¶ 29 This Court rejected the trial court's conclusion that the subdivision plan placed DeLisa on constructive notice of the easement because the land purchased from Raymond was not sold in accordance with the plan, and the deed contained no reference to either the plan or the easement. This Court also held that the trial court had not made any findings which would support an easement by implication at severance of title when the land was conveyed from mother to son in 1986, and that there was insufficient evidence to support either the traditional or Restatement tests for such an easement. Finally, this Court found insufficient evidence concerning the

use of the easement prior to Mrs. Keene's conveyance to Raymond, as well as insufficient evidence to permit an analysis of the factors concerning the creation of easements by implication.

¶ 30 Our Supreme Court granted allowance of appeal to determine whether an easement by implication was created at the time of severance of title and whether DeLisa had actual notice of the existence of the right of way over the property when he purchased it. Answering the second issue first, the high court, while agreeing that the trial court did not specifically find facts to support its conclusion that an easement by implication at severance of title was created, nevertheless held that the trial court had made sufficient factual findings to support its conclusion that DeLisa had actual notice of the existence and use of Cottage Road prior to his purchase of the twenty-acre tract from Raymond.

¶ 31 Our Supreme Court found this prior use important to the determination of whether an implied easement was created because:

The effect of the prior use as a circumstance in implying, upon a severance of possession by conveyance, an easement results from an inference as to the intention of the parties. To draw such an inference the prior use must have been known to the parties at the time of the conveyance, or, at least, have been within the possibility of their knowledge at that time. Each party to a conveyance is bound not merely to what he intended, but also to what he might reasonably have foreseen the other party to the conveyance expected. Parties to a conveyance may, therefore, be assumed to intend the continuance of uses known to them which are in considerable degree necessary to the continued usefulness of the land. Also they will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make

them apparent upon reasonably prudent investigation....

*Bucciarelli*, at 436, 691 A.2d at 448 (quoting Restatement of Property, § 476, Comment j). In a footnote, the high court noted that while it "has never specifically adopted Restatement of Property § 476 and we decline to do so now, for § 476 is merely a list of frequently encountered considerations as to whether an easement by implication at severance of title was created. Courts may, nevertheless, find the section useful and persuasive in analyzing cases like this." *Id.* at 437 n. 1, 691 A.2d at 448 n. 1.

¶ 32 Our Supreme Court then quoted the language of *Burns*,[3] *supra*, and determined that all of the requirements of an easement by implication at severance of title were present in *Bucciarelli*. With regard to the parties' intent, the high court found that Mrs. Keene and Raymond clearly intended the easement to continue. In support of this conclusion, the *Bucciarelli* court noted that not only did Raymond assist his mother in creating the subdivision plan, but he also allowed the owners of the lakeside lots to use Cottage Road during the time period in which he owned the twenty-acre tract. The *Bucciarelli* court then considered whether the use of Cottage Road was open, visible, permanent and continuous. Relying primarily upon photographic evidence of record, as well as the testimony of DeLisa's neighbor who testified that he could see the road from his nearby property, the high court concluded that use of the easement was open, visible and permanent.

¶ 33 With regard to the requirement that the use be continuous, the court first noted the testimony of various witnesses that indicated that Cottage Road had been used as early as 1976, as well as DeLisa's own testimony that he had seen cars use the road over the last ten years to get to

---

**3.** Our Supreme Court refers to *Burns* as "*Boehm*"; for the sake of consistency with this memorandum, we shall continue to refer to the case as *Burns*.

the lakeside cottages. The high court referenced a treatise for the proposition that:

> The requirement that the quasi-easement must have been "permanent" or "continuous" simply means that the use involved shall not have been occasional, accidental or temporary. This means the use shall have been of such a character as to enable the claimant to rely reasonably upon the continuance of such use.... It is submitted that ... any well-defined route should be held to satisfy the "permanent" or "continuous" prerequisite for implication.

*Bucciarelli*, at 439, 691 A.2d at 449–450 (citing 4 Powell on Real Property § 34.08[2][c] (1996)). The *Bucciarelli* court stated its agreement with this analysis of the continuous requirement and held that the road at issue in the case before it, a single lane dirt road that was approximately twenty feet wide and had been in existence for at least twenty years, was well-defined and permanent, and that the evidence, therefore, was sufficient to support a finding of continuousness.

¶ 34 Summarizing its conclusions, the *Bucciarelli* court concluded that:

> The requirements stated above have as their purpose the creation of a test to determine whether an easement was intended at severance and whether the person against whom the easement is asserted had notice, actual or constructive, that such an easement existed. In this case, the trial court found that De-Lisa had actual notice and the record supports this finding. Additionally, the evidence supports a finding that the grantor, Mrs. Keene, intended to create an easement at severance of the title and that the grantee, her son, was aware of this intent and, after the conveyance, acted in accord with the existence of the easement.
>
> Thus, since the evidence supports a finding of intention to create the easement and a finding that DeLisa purchased the land knowing of the existence of the easement, an easement by impli-

cation at severance was created and is binding against DeLisa.

*Bucciarelli*, at 439–40, 691 A.2d at 450. Thus, our Supreme Court reversed this Court's disposition and reinstated the order of the trial court that permanently enjoined DeLisa from interfering with the use of Cottage Road by the owners of the lakeside properties.

¶ 35 In their brief in the instant appeal, the Thorpes submit that the trial court "misapplied *Bucciarelli* and that *Bucciarelli* itself is not a clear statement of the law of the Commonwealth of Pennsylvania in regard to easements by implication." Thorpes' Brief at 21. In support of this assertion, the Thorpes cite this Court's decisions in *Tomlinson v. Jones*, 384 Pa.Super. 176, 557 A.2d 1103 (1989), and *Thomas v. Deliere*, 241 Pa.Super. 1, 359 A.2d 398 (1976), for the proposition that Pennsylvania has expressly adopted Section 476 of the Restatement of Property view of determining when an easement by implication arises and "that the Restatement of Property [unlike the traditional test defined in case law] does not retain the historical distinction between easements acquired by implication and those acquired of necessity but rather requires a balancing of all relevant factors to ascertain the inference of intent." *Tomlinson*, 557 A.2d at 1104. The Thorpes then assert that the "only possible way to attempt to reconcile the two apparently contradictory lines of cases discussed above is to turn to the purported distinction set forth in [*Burns* and cited in *Bucciarelli*] between 'easements implied by reservation' and 'easements which are implied on the grounds of necessity[.]'" Thorpes' Brief at 23. The Thorpes further argue, however, that "the line of cases leading up to the decision of this Court in *Tomlinson* as well as the decision of the Supreme Court in *Bucciarelli* itself indicate that this distinction has become blurred if not meaningless and the element of 'necessity' should at least be considered if not given substantial weight in determining whether or not an

easement by implication of any variety exists in a particular situation." *Id.*

¶ 36 In view of the above discussion of case law concerning easements by implication at severance of title, we concur with the Thorpes' assertion that the traditional test to determine whether an easement by implication at severance of title exists has been stated differently over the years, and, at the very least, this Court has adopted Section 476 of the Restatement as an alternative test.[4] However, given the recent, unanimous pronouncement by our Supreme Court in *Bucciarelli*, wherein the high court reiterated the *Burns* test without further discussion and declined to adopt the Restatement view, we hold that any such conflict found within the case law in this area no longer exists. Thus, we shall now consider the factors as set forth in *Bucciarelli* as applied to the factual circumstances presented in the instant case.

¶ 37 The *Bucciarelli* court first looked at the intentions of the parties upon severance. In the present case, prior to the severance of title caused by Virginia Daddona's conveyance of the Thorpe property to Dr. Burton in 1981, Virginia and her husband resided on the Thorpe property and Donald and Eva Daddona resided on the Daddona property. During this time, the testimony revealed that both Daddona families used the paved driveway as a regular access route to their respective properties. Additionally, it is important to note that in 1980, when the Daddonas, along with Virginia and Anthony Daddona, subdivided the Daddona property and conveyed the rear portion to Dr. Burton, all three properties gained access from Emmaus Avenue via this driveway. Upon conveyance of title to the Thorpe property in 1981 to Dr. Burton and his wife, the existing paved driveway continued to provide access to all three properties.

¶ 38 The above circumstances amply demonstrate an intention of the parties to the conveyance to permit the continued use of the driveway existing between the parties. Moreover, in its adjudication, the trial court stated that it found the testimony of the common grantor, Virginia Daddona, particularly credible:

> [T]he credible testimony of the grantor of the Thorpe Property and the Daddona Property, Virginia S. Daddona, revealed that it was always intended that the common driveway would serve the Daddona Property, the Thorpe Property and the Burton Property. From 1968 until 1981, Virginia S. Daddona was the owner of both the Daddona Property and the Thorpe Property. At the time of the conveyance of the deed to the Thorpe Property to Gene J. Riggins and Lucia W. Riggins, Virginia S. Daddona retained ownership of the Daddona Property. She openly and unequivocally testified that at the time of conveyance she intended the paved driveway to continue to provide mutual access to the Daddona Property, the Thorpe Property and the Burton Property. Based on the foregoing, the evidence supports a finding of an intention to create an easement.

Adjudication, 2/24/99, at 16 (footnote omitted).

¶ 39 As noted above, when Dr. Riggins and his wife first purchased the Thorpe property, they were already using the existing driveway between the Daddona property and the Thorpe property for access to what is now termed the Burton property from Emmaus Avenue. In the words of the trial court, "common sense dictates that at the time of severance in 1981, [the Riggins] had notice of the intent that the driveway would continue to be utilized by vehicular traffic to access the three (3) subject properties." *Id.* at 16–17

---

4. Although *Thomas* cited to two Supreme Court cases in support of its claim that the Restatement view has been adopted in Pennsylvania, our review of those cases reveal no such pronouncement, but rather, only passing reference to the section.

n. 5. Additionally, we note the testimony of Mrs. Riggins. She testified that both she and her husband would access the Burton property from Emmaus Avenue by using the driveway, that the Daddonas also used the driveway, and that her husband's patients were to access the Burton property only by use of the existing driveway. Upon cross-examination, Mrs. Riggins stated that, at the time she and her husband owned both the Burton and Thorpe properties, she had no idea where the property line for the Thorpe and Daddona properties was vis-à-vis the driveway. Nevertheless, she reiterated that they used the driveway for access to both of their properties. Thus, because "the intent of the parties is clearly demonstrated by the terms of the grant, the surroundings of the property and other res gestae of the transaction", *Mann–Hoff*, 604 A.2d at 707, we find this element of the test reiterated in *Bucciarelli* to have been met.[5]

■ ¶ 40 The remaining *Bucciarelli* requirements, that an easement by implication at severance of title be open, visible, permanent and continuous, are amply demonstrated in the present case. Undisputed record evidence demonstrated that the driveway at issue provided access to all three properties from Emmaus Avenue at least since 1981 when Virginia Daddona conveyed the Thorpe property to Dr. Riggins and his wife. At that time, the driveway ran from both properties' frontage on Emmaus Avenue to the rear of their respective houses. Therefore, the use of the driveway was clearly open and visible. Moreover, the record evidence indicates that the ten to twelve foot driveway was entirely paved during this time period. Thus, this "well-defined route" satisfies the "permanent" prerequisite for implication.

*Bucciarelli*, at 439, 691 A.2d at 449–50. Finally, although Mr. Thorpe testified contrary to the testimony of Donald Daddona and Mrs. Burton that the driveway was only rarely used, the trial court chose to discredit this testimony, finding that the driveway was regularly used by all the parties and thus found that the use of the driveway was "continuous". Indeed, Mr. Thorpe himself testified that when he first purchased the Thorpe property, he had "no problem" with the use of the driveway by the Daddonas and the Burtons and raised no objection until 1997, when he discovered that the driveway was entirely within the boundary lines of his property. N.T., 12/7/98, at 104.

■ ¶ 41 Finally, the Thorpes argue that the trial court "gave absolutely no consideration to the element of necessity"[.] Thorpes' Brief at 24. Although they correctly assert that the *Bucciarelli* court stated that "[c]ourts may ... find [Section 476 of the Restatement of Property] useful and persuasive in analyzing cases", *Bucciarelli*, at 437 n. 1, 691 A.2d at 448 n. 1, the high court did not require such consideration. Moreover, we reiterate that "a showing of necessity [does] not mean to require a showing of 'absolute necessity,' but rather [requires] only that the claimed easement be shown to be convenient or beneficial to the dominant estate." *Mann–Hoff*, 604 A.2d at 708 n. 4. Because the evidence reveals that the Daddonas, since 1968, have used the driveway to access their property, we conclude that their use of the easement meets this definition.

¶ 42 Thus, in the present case, the record evidence supports the trial court's conclusion that, at the time Virginia Daddona conveyed the Thorpe property to Dr. Rig-

5. We reject the Thorpes' claim that the severance in title to be considered by the court occurred in 1966 when the owner of both the original Daddona and Thorpe properties conveyed the Thorpe property to Virginia Daddona. Evidence of record clearly indicates that unity of title existed in Virginia Daddona fol-

lowing her subsequent acquisition of both properties. *See generally, Schwoyer v. Smith,* 388 Pa. 637, 131 A.2d 385 (1957). Thus, the trial court correctly viewed Virginia Daddona's conveyance of the Thorpe property as the appropriate severance of title.

gins and his wife, she intended to create an easement at severance of title, that the Riggins were aware of this intent, and that, after the conveyance, they acted in accordance with the existence of the easement. As the record further supports the trial court's finding that the Thorpes purchased the land with actual notice of the easement, an easement by implication at severance was created and is binding on the Thorpes.[6]

¶ 43 In their next claim, the Thorpes assert that the trial court committed an error of law when it reformed the 1980 right of way agreement based upon a finding of mutual mistake. In support of this claim, the Thorpes argue:

> Initially, the lower court specifically found its original determination that the parties to the Right of Way Agreement believed at the time they entered into the Right of Way Agreement that the driveway described in the document determined the boundary line between the Thorpe Property and the Daddona Property. [sic] The lower court rescinded this finding of fact not only because the record does not support such a conclusion, but because the evidence in the case indicates that at least some of the parties to the Right of Way Agreement knew that the easement area described in the document was not co-extensive with the existing driveway on the Thorpe Property at the time the Right of Way Agreement was entered into. Virginia Daddona testified that at the time she acquired her interest in the Thorpe Property, she was aware of the fact that the existing driveway was on the Thorpe Property. (R 194a) This conclusion is reinforced by the contents of the Right of Way Agreement itself and the Sewer Easement which was executed contemporaneously with the Right of Way Agreement. When the two documents are read together they indicate

that the parties who executed them in 1980 intended to create the future possibility for the construction of a new driveway from Emmaus Avenue serving all three properties by setting forth the area within which the driveway would be constructed and prospectively allocating the cost of the construction and maintenance of the driveway. In light of the clear language of the Right of Way Agreement and the Sewer Easement, the testimony of the parties to the Right of Way Agreement and the rescinding by the lower court of its finding of fact regarding the understanding of the respective parties at the time the Right of Way Agreement was entered into, the lower court's reformation of the Right of Way Agreement to superimpose the area described in it over the existing driveway on the Thorpe Property was error.

Thorpes' Brief at 29–30. We cannot agree.

■ ¶ 44 Courts of equity have jurisdiction to reform deeds and instruments where mutual mistake exists. *Rusciolelli v. Smith*, 195 Pa.Super. 562, 171 A.2d 802, 805 (1961). A mutual mistake occurs when the written instrument fails to properly set forth the "true" agreement among the parties. *Doman v. Brogan*, 405 Pa.Super. 254, 592 A.2d 104, 111 (1991). Further, the language of the instrument should "be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Id.* at 109 (citing *Yuscavage v. Hamlin*, 391 Pa. 13, 16, 137 A.2d 242, 244 (1958)). For the reasons that follow, we conclude that the trial court correctly reformed the right of way agreement executed by the parties to the conveyance of the Burton property.

¶ 45 Initially, we agree with the trial court that its rescission of the factual finding that the parties to the right of way

---

**6.** Given this determination, we need not consider whether the Daddonas acquired the right to continued use of the driveway either by a prescriptive easement or an irrevocable license.

agreement mistakenly believed that their common boundary line was the center of the existing driveway does not affect its decision to reform the right of way. In short, that finding, which, concededly, is not supported by the testimony of all parties to the right of way agreement, has no bearing on the court's finding that all of the parties to that agreement intended the right of way to include the existing driveway. In short, irrespective of their belief about the common boundary line, both parties to the agreement mistakenly believed that the right of way described in the easement encompassed the existing driveway.

¶ 46 At the time of the conveyance of the Burton property, Virginia and Anthony Daddona owned the Thorpe property and the Daddonas, along with Virginia and Anthony Daddona, owned the Daddona property. After reviewing the testimony presented by some of these parties, it is clear that their intention when entering into the right of way agreement was to grant the residents of all three properties the use of the existing driveway.

¶ 47 Virginia Daddona, although aware that the driveway was completely on her property (the Thorpe property), testified that it was her intent in entering into the agreement to provide a right of way over the existing driveway for the occupants of the Burton and Daddona properties. The Thorpes rely on a drawing accompanying the sewer easement that was executed contemporaneously with the right of way agreement as proof that an entirely new twenty-five foot drive was to be built in the right of way area. Donald Daddona, a party to both agreements, testified without contradiction, however, that the proposed driveway was not intended to provide access to the home on his property, but rather, was to provide access to a future subdivision of the portion of the Daddona property that fronts on Emmaus Avenue. This testimony is supported by the fact that the area described in the right of way agreement is, in no way, descriptive of the boundaries of the proposed driveway, which, as depicted on the drawing, is completely within the eastern boundary of the Daddona property. Finally, we note that the drawing does not extend the proposed driveway to the Burton property, as was clearly the intent of the right of way agreement. As Donald Daddona testified, to permit such an extension, the proposed driveway would go through his house.

¶ 48 Finally, we note that the only concern that arises when reforming an instrument based upon mutual mistake would be the potential harm to third parties. The trial court's conclusion that the Thorpes will suffer no harm since the reformed right of way does no more than reflect the existing driveway as the right of way is supported by the evidence. Although the right of way agreement with the incorrect description was recorded at the time the Thorpes purchased their property, there is no evidence that they relied on the agreement when deciding to purchase the property. In fact, Mr. Thorpe testified that he did not learn that the driveway was almost entirely on his property until 1997 when Dr. Burton had the properties surveyed. When the Thorpes purchased their property in 1988, they did not have a survey performed nor did they inquire into the exact location of the right of way. Thus, since the Thorpes did not object to the Daddonas' use of the driveway for the first eight years in which they owned the Thorpe property, they cannot demonstrate any harm. Therefore, the trial court's reformation of the right of way agreement to reflect accurately the location of the driveway that has existed and has been used since at least 1968 was proper.

¶ 49 In their third issue, the Thorpes claim that the Daddonas, by placing landscaping and other improvements within the *original* right of way area, abandoned the right of way. We cannot agree. In order to show such an abandonment, the moving party must es-

tablish that the dominant tenement (the Daddonas) had an intent to abandon the easement coupled with either 1) adverse possession by the owner of the servient tenement (the Thorpes); 2) obstruction of the right of way by the dominant tenement that is inconsistent with its further enjoyment; or 3) affirmative acts by the owner of the dominant tenement that renders the use of the right of way impossible. *Gabel v. Cambruzzi*, 532 Pa. 584, 589, 616 A.2d 1364, 1367 (1992).

¶ 50 In the present case, the evidence does not support a conclusion that the Daddonas intended to abandon the right of way. They have used the existing driveway, which they believed was entirely within the right of way, for access to their property from at least 1968 to present. Although the *original* right of way did not wholly encompass the driveway and the Daddonas have, over the years, placed some improvements within portions of the original right of way area, these acts did not result in the abandonment of the *original* right of way. Mere non-use is not sufficient to establish abandonment. *Stozenski v. Borough of Forty Fort*, 456 Pa. 5, 317 A.2d 602 (1974). Thus, we conclude that the trial court correctly rejected the Thorpes' abandonment claim.

¶ 51 In their final claim, the Thorpes present a one-paragraph argument that the trial court erred in dismissing their action in ejectment which sought the removal of the various objects the Daddonas had placed within the original right of way area. Given our conclusions that the trial court did not err in reforming the right of way agreement and in rejecting the abandonment claim, we further conclude that the trial court properly dismissed this claim and need not address it further.

¶ 52 Decree affirmed.