**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. et al., Plaintiffs,**

**v.**

**PHILLY FAMILY PRACTICE, INC. et al., Defendants.**

Civil Action No. 05–2081.

United States District Court, E.D. Pennsylvania.

Nov. 27, 2007.

Cy Goldberg, Goldberg, Miller & Rubin, PC, Philadelphia, PA, for Plaintiffs.

Joel W. Todd, Dolchin, Slotkin & Todd PC, Alan B. Epstein, Jennifer L. Myers, Spector, Gadon & Rosen, PC, Douglas N. Stern, Douglas N. Stern, Esquire, Philadelphia, PA, for Defendants.

Bernard Snyder, Jenkintown, PA, pro se.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

An insurance company sued several health-care providers for fraud and racketeering based on their alleged participation in a scheme to submit false bills for treatment of injuries purportedly sustained in certain staged accidents. The parties settled the case and executed a release. The insurance company and a related entity subsequently brought the instant suit against several health-care providers, some of whom are affiliated with the defendants in the prior action, for fraud and racketeering, also based on alleged participation in a scheme to submit false bills.

Certain defendants now move for summary judgment on the basis that the release executed in the prior case bars all of the plaintiffs' claims against them in this case. Plaintiffs argue that the scope of the

release is limited to only certain acts of insurance fraud and does not cover the fraud alleged in this case, that the release applies to only one of the plaintiffs, and that the release applies to only certain defendants.

For the reasons that follow, the motions for summary judgment will be denied.

## I. BACKGROUND

### A. *The Makris Case: Parties*

On October 19, 2001, State Farm Mutual Automobile Insurance Co. ("State Farm Mutual") brought suit against certain health-care providers and related persons in this Court. *See State Farm Mut. Auto. Ins. Co. v. Makris,* No. Civ. A. 01–5351 (E.D.Pa.2001). One of the defendants in the *Makris* case, Rennard Health Care, Inc. ("Rennard Inc."), is also a defendant in the instant case. On March 10, 2003, the parties settled the *Makris* case, and State Farm Mutual voluntarily dismissed its claims and executed a settlement agreement and release in favor of Rennard Inc.

### B. *The Instant Case: Parties*

On May 3, 2005, State Farm Mutual *and* State Farm Fire and Casualty Co. ("State Farm Fire") sued certain health-care providers. This is the case sub judice. Defendants in this case are Rennard Inc.; Rennard Health Care, P.C. ("Rennard P.C."); Philly Family Practice, Inc.; Advanced Family Medicine, P.C.; Management Services of PA, Inc.; Hav Moeung; Alexander Tarnopolsky; Bernard Snyder; Joseph Mandale; and Lana Mandale.

Before the Court are the motions for summary judgment filed by Alexander Tarnopolsky and Rennard P.C. (doc. no. 156), and Joseph Mandale, Lana Mandale, and Management Services of PA, Inc. (doc. no. 158).[1]

### C. *The Makris Case: The Complaint*

The second amended complaint filed in the *Makris* case was the operative complaint at the time the release was executed. It was filed on June 11, 2003, and it alleged in relevant part:

> Defendants were active participants in a scheme to defraud State Farm and other insurers by staging automobile accidents, alleging phony injuries as a result of the staged accidents, preparing, and assisting in the preparation of, false and fraudulent medical reports and bills alleging injuries never sustained and treatment never provided, and filing of false and fraudulent insurance claims with State Farm and other insurers under various policies for first party benefits, uninsured and underinsured motorist benefits, property damage payments and payments for bodily injury claims.

> Defendants were active participants in a scheme to defraud State Farm by making, and assisting in making, false and fraudulent insurance claims under State Farm automobile insurance policies and initiating third-party claims against State Farm insureds seeking

---

1. The other five defendants have not moved for summary judgment. The Court entered a default against both Hav Moeung and Philly Family Practice, Inc. for failing to answer the complaint. While Advanced Family Medicine, P.C. filed an answer to the complaint (doc. no. 6) and amended complaint (doc. no. 128), it did not file a motion for summary judgment. Similarly, while Bernard Snyder filed an answer to the amended complaint (doc. no. 114), he did not file a motion for summary judgment. Finally, although Rennard Inc.—which is a distinct entity from Rennard P.C.—filed a motion to dismiss the amended complaint (doc. no. 116), after that motion was denied (doc. no. 123), it failed to file an answer to the amended complaint. Plaintiffs have not requested the entry of default against Rennard Inc.

payment for pain and suffering allegedly suffered in the staged accidents.

It was further part of the scheme to defraud State Farm that defendants created and submitted documents including bills, medical reports, treatment records and other documents that:

a. reported false examination findings and provided unnecessary physical therapy and chiropractic treatment to "support" billing for certain examinations and to justify the need for ongoing treatment;

b. documented examinations, modalities and treatments not rendered;

c. reported and billed for treatment that was excessive and/or unnecessary and/or redundant;

d. prescribed durable medical equipment that was medically unnecessary.

The relief sought by State Farm against defendants includes claims for compensatory damage to recover payments made by State Farm to defendants in third-party and uninsured and underinsured motorist claims, property damage claims and payments made on behalf of defendants by State Farm under medical payment coverage for treatment allegedly provided to defendants for the injuries they falsely claimed to have suffered as a result of the staged accidents.

. . . . .

The scheme to defraud is based upon a series of alleged motor vehicle accidents, including but not limited to those described below . . . .

. . . . .

It was part of the conspiracy and scheme to defraud State Farm that passengers in the vehicles that were involved in staged accidents were referred to medical facilities, in most cases Rennard and Philmont, for phony medical treatment. In the furtherance of the scheme to defraud, fraudulent medical reports, bills and other records were prepared by defendant doctors Faynberg and Berdichevsky on behalf of Rennard and Philmont and sent to State Farm to obtain payment on behalf of defendant doctors and facilities. These reports, bills or other records were false and fraudulent in that they concerned physical examinations and physical therapy treatments at defendants facilities which were never provided or were unnecessary.

Second Am. Compl., *Makris,* ¶¶ 2–5, 38, 45 (doc. no. 158, ex. E).

State Farm Mutual then listed five allegedly staged accidents—those occurring on December 19, 1996; November 18, 1997; April 20, 1998; April 30, 1998; and June 24, 1999—and alleged that the motorists purportedly injured in the accidents went to Rennard Inc., and other medical facilities, to receive treatment even though they were not in fact injured. *Id.* ¶¶ 48–81. The "relevant times to this action" were alleged to be from 1996 to the "present," i.e., the filing date of the second amended complaint, June 11, 2003. *Id.* ¶ 7.

#### D. *The Instant Case: The Complaint*

The first amended complaint is the relevant complaint in this case. It was filed on May 16, 2006, and it alleges:

[The defendants] were active participants in a scheme to defraud State Farm by doing acts including, but not limited to, producing and submitting fraudulent medical reports, bills and other documents, and representations which were intended to generate payment from State Farm for medical treat-

ment allegedly provided to individuals insured by State Farm.

. . . . .

[P]hysical examinations, physical therapy, diagnostic testing, radiographic testing, chiropractic treatments and other services and/or goods were billed for [sic] which were never performed, provided in violation of applicable law, not prescribed and/or not provided for the medical necessity of the patient, but rather for other reasons, such as unjustly enriching the Defendants and/or other individuals.

. . . . .

During the relevant times, in reasonable reliance on and in belief of the truth of the medical reports and bills from Defendants, State Farm made payments to Philly Family, Advanced, Rennard P.C. and/or Rennard Inc. Further, State Farm made payments to individuals insured by State Farm involved in alleged accidents with uninsured and/or underinsured motorists in reasonable reliance on the misleading, incorrect and/or fraudulent medical reports and bills from Defendants.

First Am. Compl., *Philly Family*, ¶¶ 16, 29, 41 (doc. no. 106).

The complaint alleges that the relevant times are 2000 through the "present," i.e., the filing date of the first amended complaint, May 16, 2006. *Id.* ¶ 38.

### E. *The Release*

The *Makris* release was executed on March 10, 2003, between State Farm Mutual and Rennard Inc. It provides:

State Farm Mutual Automobile Insurance Company ("Releasor"), for the sole consideration of $65,000 . . . does hereby on behalf of itself, its heirs, executors, administrators, successors, and assigns, and its past and present officers, directors, employees, agents, attorneys and representatives, remise, release and forever fully and completely discharge Rennard Health Care, Inc., its heirs, executors, administrators, successors and assigns and their past and present officers, directors, employees, agents and representatives, ("Releasees") from any and all causes of action, claims, suits, and demands of whatsoever kind on account of any and all liability arising out of their participation in the activities which are the subject of a lawsuit styled *State Farm Mutual Automobile Insurance Company v. Athanasios Makris, et al.* instituted by the undersigned in the United States District Court for the Eastern District of Pennsylvania, No. 01–5351.

It is expressly understood and agreed that this Release is intended to cover and does cover only all losses or damages, known or unknown, which arise from or are directly related to the Releasees' participation in the occurrences set forth in the legal action noted above. It is further understood and agreed that this is the complete Release and Settlement Agreement and that there are no written or oral understandings, or agreements, directly or indirectly connected to this Release and Settlement Agreement that are not incorporated herein.

Release and Settlement Agreement (doc. no. 158, ex. A).

### F. *The Relationships Between the Parties*

#### 1. *Plaintiffs*

State Farm Mutual was the sole plaintiff in the *Makris* case. State Farm Mutual and State Farm Fire are both plaintiffs in this case. Here, although State Farm Mutual and State Farm Fire are obviously related companies, neither party has point-

ed to any evidence as to the corporate structure or relationship between State Farm Mutual and State Farm Fire.

### 2. Defendants

Rennard Inc. was a defendant in the *Makris* case and is a defendant here. The *Makris* release was executed in favor of Rennard Inc., and thus the relationship between Rennard Inc. and the other defendants in this case is hotly disputed.

Defendants assert that Rennard Inc. became Rennard P.C. in July 2002. Prior to the change in corporate status, Joseph Mandale owned 100% of Rennard Inc.'s stock and served as its president. Along with Joseph Mandale, the other three members of Rennard Inc.'s board of directors were Lana Mandale, Nora Faynberg, and Alex Tarnopolsky. In July 2002, the stock of Rennard Inc. was transferred to Nora Faynberg and Alex Tarnopolsky in equal quantities, and Faynberg and Tarnopolsky became the two officers of the company, now called Rennard P.C. On May 30, 2003, Faynberg resigned from Rennard P.C. and transferred her stock to Tarnopolsky, making Tarnopolsky the sole owner and officer of Rennard P.C. Management Services of PA, Inc., is a management company owned by Joseph and Lana Mandale.

Plaintiffs tell a different story, however, contending that the stock transfer (from Joseph Mandale to Tarnopolsky and Faynberg) and name change (from Rennard Inc. to Rennard P.C.) are part of a scam. Plaintiffs point out that F. Michael Medway, the attorney who represented Rennard Inc. in its settlement negotiations with State Farm Mutual in March 2003, testified in his deposition that it was Joseph and Lana Mandale who were the

owners of Rennard Inc. and who authorized him to enter into the settlement. Medway never dealt with Tarnopolsky or Faynberg. It also remains a mystery how Rennard Inc. could have ceased to exist in July 2002, as asserted by Defendants, and yet negotiate a settlement with State Farm Mutual in the *Makris* case *in 2003* and enter an appearance in this case *in 2006.*

## II. DISCUSSION

### A. Legal Standards

#### 1. Summary judgment standard

A court must grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. *Id.* at 248–49, 106 S.Ct. 2505. "In considering the evidence, the court should draw all reasonable inferences against the moving party." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir.2007).

#### 2. Interpretation of the release

 Under Pennsylvania law, ambiguous writings are interpreted by the finder of fact and unambiguous writings are interpreted by the Court as a matter of law.[2]

---

**2.** The parties agree that Pennsylvania law controls the interpretation of the release, but

this is not a foregone conclusion. Indeed, "federal law governs issues relating to the

*Ins. Adjustment Bureau v. Allstate Ins. Co.*, 588 Pa. 470, 905 A.2d 462, 469 (2006). Thus, the first question is whether the release is ambiguous. If it is ambiguous, the Court may receive extrinsic evidence to resolve the ambiguity, and if it cannot be resolved, the ambiguous agreement is left for consideration by the finder of fact. If the release is not ambiguous, the Court will decide its meaning as a matter of law. *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 91 (3d Cir.2001); *Allstate*, 905 A.2d at 469.

■ A contract is ambiguous if it is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Allstate*, 905 A.2d at 468–69; *Regents of Mercersburg Coll. v. Rep. Franklin Ins. Co.*, 458 F.3d 159, 172 (3d Cir.2006); *Glass v. City of Phila.*, 455 F.Supp.2d 302, 337 n. 57 (E.D.Pa.2006) (applying same standard to a release). A contract is not ambiguous, however, merely because "the parties do not agree on the proper construction." *Bohler–Uddeholm*, 247 F.3d at 93 (quotation omitted).

B. *There Is a Genuine Issue of Material Fact as to the Scope of the Release Because the Terms of the Release Are Ambiguous*

Plaintiffs contend that the scope of the *Makris* release covers only liability resulting from the staging of certain specific automobile accidents, the treatment of the persons involved in the staged accidents, and the billing of that treatment to State Farm Mutual. Defendants contend that the release covers liability resulting from the claims brought in this case, which allege fraudulent treatment and billing that is not directly related to the staging of accidents. Determining the scope of the release is the crux of the instant motions.

1. *The release is ambiguous*

■ The scope of the release is defined by the following two operative sentences:

[The release applies to] any and all causes of action, claims, suits, and demands of whatsoever kind on account of any and all liability arising out of [Rennard Inc.'s] participation in the activities which are the subject of a lawsuit styled [*State Farm v. Makris* ].

It is expressly understood and agreed that this Release is intended to cover and does cover only all losses or damages, known or unknown, which arise from or are directly related to [Rennard Inc.'s] participation in the occurrences set forth in the legal action noted above.

Release and Settlement Agreement (doc. no. 158, ex. A). These sentences are ambiguous because they are reasonably susceptible of at least three different constructions.

First, the release can be read most narrowly to apply only to the *specific acts of insurance fraud expressly alleged in the complaint* in the *Makris* suit. In the parties' words, the Release applies "only" to "occurrences" that were "set forth in" *Makris*. By this reading, it does not mat-

validity of a release of a federal cause of action." *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 108 (3d Cir.1994) (citation omitted). In this case, jurisdiction is based on the federal question raised by Plaintiffs' claims under RICO. Nonetheless, so long as Congress is silent on the issue and there is not a compelling federal interest in the case, as here, the Court can "giv[e] content" to the federal law by either incorporating relevant state law or fashioning federal common law. *Id.* (citation omitted). Therefore, although the jurisdiction of the Court is premised on a federal question, the Court will apply, with the consent of the parties, Pennsylvania law to examine the language and scope of the release.

ter that the Release may contain broader language elsewhere; the narrow "set forth in" language limits the scope of the release, which applies "only" to losses or damages arising from or directly related to the "occurrences" expressly described in the *Makris* complaint. The *Makris* claim was premised on a specific scheme of insurance fraud: the staging of five car accidents and the fraudulent billing of insurance companies for the treatment of injuries *resulting from* those five[3] staged accidents ("the Staged–Accident Scheme").[4] Therefore, the most narrow reading of the release covers additional *legal* claims arising out of or directly relating to the Staged–Accident Scheme; it does not cover claims based on factual "occurrences" that took place independently of the Staged–Accident Scheme in *Makris*.

Second, the release can be read more broadly to encompass not only the Staged–Accident Scheme, but also *any instances of medical and billing fraud by Rennard Inc. against State Farm Mutual arising from the staging of accidents*. In the parties' words, the release covers any "claims" arising from the "activities" that are "the subject of" the *Makris* suit. The "subject" of the *Makris* suit was the staging of accidents and the fraudulent treatment and billing of injuries allegedly sustained in the staged accidents. By this reading, the "set forth in" language discussed above

limits only the types of "losses or damages" covered, and does not limit the types of "claims" that the release allows. Rather, a "claim" may be brought under the release as long as it arises from the "activities" that were "the subject of" *Makris*, i.e., the staging of accidents and fraudulent treatment and billing of injuries allegedly sustained in the staged accidents. In other words, under this reading the release covers any claim for fraudulent treatment or billing that arises from the staging of an accident, whether or not it was alleged in the *Makris* complaint.

Finally, under the third and broadest reading, the release could apply to *any claim by State Farm Mutual against Rennard Inc. for fraudulent treatment or billing*, regardless of whether it arises from a staged accident. In the parties' words, the release applies to any "claims" arising from Rennard Inc.'s "participation in" the activities which are "the subject of" *Makris*. In *Makris*, Rennard Inc. was not alleged to have staged any accidents; its "participation" was limited to fraudulent treatment and billing of the alleged victims of the staged accidents. Even if this reading is less convincing than the narrower readings discussed above, it is certainly reasonable, given the vague and imprecise language of the release.

In short, the language of the release is ambiguous; it fails to employ definite language that is reasonably susceptible of

---

**3.** At oral argument, Plaintiffs represented that the scheme in *Makris* arose from the staging of nine accidents, four of which are listed in the RICO case statement, but not the complaint. The *Makris* complaint states that "[t]he scheme to defraud is based upon a series of alleged motor vehicle accidents, including but not limited to [the five] described below." Second Am. Compl., *Makris*, ¶ 38 (doc. no. 158, ex. E). The actual number of staged accidents is less important than the fact that all of the acts of insurance fraud

alleged in *Makris* stem from a discrete group of staged accidents.

**4.** "The scheme to defraud is *based upon a series of alleged motor vehicle accidents*, including but not limited to [the five] described below . . . . During the relevant times individuals claiming physical injuries *as a result of the staged motor vehicle accidents* sought or were referred for medical treatment at defendant facilities." Second Am. Compl., *Makris*, ¶¶ 38–39 (doc. no. 158, ex. E) (emphases added).

only one meaning. *Compare Harrity v. Med. Coll. of Pa. Hosp.*, 439 Pa.Super. 10, 653 A.2d 5, 11 (1994) (finding unambiguous a release from all claims *"for which suit was brought* in ... Civil Action No. 88–4913, styled *Sarah T. Harrity vs. Claridge at Park Place, Inc."* (emphasis added)). Therefore, unless the ambiguity can be resolved by the extrinsic evidence raised by the parties, consideration of the ambiguous release must be left for the factfinder.

### 2. *Extrinsic evidence does not eliminate the ambiguity in the release*

The extrinsic evidence introduced by the parties does not resolve the ambiguity as to the scope of the release. The parties rely on only two pieces of extrinsic evidence: the deposition of F. Michael Medway, the attorney who entered into the release on behalf of Rennard Inc. (doc. no. 158, ex. H), and the affidavit of Defendant Joseph Mandale, owner of Rennard Inc. at the time of its entry into the release (doc. no. 158, ex. F).

Defendant Mandale's self-serving affidavit, however, is an unreliable foundation to support his motion for summary judgment. *See I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting,* 136 F.3d 114, 122 (2d Cir.1998) ("[A] finder of fact need not have believed [appellee's employee]'s self-serving affidavit. It is as plausible, given the ambiguity in the Plan language, that appellees originally read the coverage as appellants now do, and that the affidavit was, to put it politely, an afterthought.").

■ The deposition of Medway is thus the only alleged piece of objective extrinsic evidence. Medway conceded in his testimony that, in *Makris,* "[State Farm Mutu-

al's] claim was that there were dummy accidents that were staged," Medway Dep. at 24, Jan. 29, 2007 (doc. no. 158, ex. H), but also theorized that "these staged accidents that were specifically mentioned in this complaint were merely a key to open a door to a larger type of wrongdoing, if you will, as [State Farm Mutual] saw it to exist," *id.* at 26. To support this theory, Medway referred to his conversations with attorneys for State Farm Mutual in *Makris*—including Joseph Mancano and Edward Bradley—and David Murphy, who signed the release. *Id.* at 26. The conversations, however, occurred "[a]t depositions, during breaks, off the record discussions," but not on the record or in writing. *Id.* at 29.

The Court agrees that the Medway deposition does provide some evidence as to the intent of the parties. It is of little weight, however, since it is all uncorroborated and unverifiable by any other objective evidence. *Compare Harrity,* 653 A.2d at 11 (affidavit of attorney who negotiated the release was "in complete conformity" with the "extremely clear limiting language" of the release, and was corroborated by the "nominal amount [of consideration], commensurate with the limited liability of [the released party]"). Here, the Medway deposition is not one among several pieces of evidence that confirms an extremely clear release, but rather a small exception to an otherwise vast dearth of evidence.

■ Accordingly, because there is insufficient evidence to eliminate the ambiguity from the release, interpretation of the release must be left to the finder of fact.[5]

---

5. Defendants argue that if the release is found to be ambiguous, the Court should resolve the ambiguity against its drafter at the summary judgment stage. It is well-established, how-

ever, that "[a]lthough the intent of the parties to a contract is normally a question for the court, it becomes a jury question if [the contract] is ambiguous and its resolution de-

**C. *There Is a Genuine Issue of Material Fact as to Whether State Farm Fire Is Covered by the Release***

Plaintiffs argue that the release applies only to State Farm Mutual—and not State Farm Fire—because State Farm Fire was neither a plaintiff in the *Makris* case nor a signatory to the release. Defendants have apparently failed to take discovery on the relationship between State Farm Mutual and State Farm Fire. This failure is puzzling, especially given that the nature of the relationship, if any, is highly material to whether the release applies to State Farm Fire.

It is reasonable to assume that the State Farm entities are closely related, as they have the same counsel and are pursuing this case as if they were one entity. Nonetheless, at the summary judgment stage, Defendants, as movants, bear the initial burden of showing the absence of any genuine issues of material fact. *El*, 479 F.3d

at 237. Moreover, because Defendants seek summary judgment in their favor as to an affirmative defense, they "bear the burden of proof at trial and therefore must show that [they have] produced enough evidence to support the findings of fact necessary to win. Thus, if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.* at 237–38 (noting that "gaps in the evidence" and "doubts as to the sufficiency of movant's proof" preclude summary judgment).

 Here, although Defendants briefly assert in their motions and supporting legal memoranda that State Farm Fire, although not a party to the release, is sufficiently related to State Farm Mutual so as to be covered by the release, they have failed to marshal *any* competent evidence to support this assertion.[6] Therefore, De-

---

pends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence." *Motor Coils Mfg. Co. v. Am. Ins. Co.*, 308 Pa.Super. 568, 454 A.2d 1044, 1048 (1982); *Allstate*, 905 A.2d at 469. Such a question is reserved for the jury because "[s]ummary judgment is inappropriate when a case will turn on credibility determinations." *El*, 479 F.3d at 237 (citations omitted). It is only when the factfinder's " 'inquiry fails to clarify the ambiguity that the rule of [*contra proferentem* ] . . . should be used to conclude the matter against that party responsible for the ambiguity, the drafter of the document.' " *Sun Co. v. Pa. Turnpike Comm'n*, 708 A.2d 875, 879 (Pa. Cmwlth.1998) (omission in original) (quoting *Burns Mfg. Co. v. Boehm*, 467 Pa. 307, 356 A.2d 763, 766 n. 3 (1976)). In effect, Defendants ask the Court to deprive the jury of its factfinding role. Instead, courts have commonly employed jury instructions to suggest the use of the *contra proferentem* rule to juries. *See, e.g., Fogarty v. Near N. Ins. Brokerage*, 162 F.3d 74, 78 (2d Cir.1998); *Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 960 & n. 8 (8th Cir.2000).

Moreover, even if it were procedurally appropriate at this stage, use of the *contra proferentem* rule is improper where the parties are both sophisticated or have both thoroughly negotiated the contract. *See Galdieri v. Monsanto Co.*, 245 F.Supp.2d 636, 647 (E.D.Pa.2002) (citing *Burns*, 356 A.2d at 767) ("[T]he parties engaged in free and bilateral negotiations, rendering automatic application of the *contra proferentem* rule inappropriate."). Although a small quantum of evidence has been adduced as to the circumstances surrounding the negotiation of the release, there remains a genuine issue of material fact as to the sophistication of each party and each party's bargaining power in drafting the release.

6. Defendants Joseph and Lana Mandale and Management Services of PA, Inc. fail to address the relationship between the State Farm entities (doc. no. 158). Defendants Tarnopolsky and Rennard P.C. aver that "State Farm Fire is a subsidiary of State Farm Mutual or is otherwise owned and/or operated by State Farm Mutual." Rennard Defts.' Mot. for Summ. J. (doc. no. 156, at 3 n. 1). The only support offered for this argument is defense counsel's "information and belief," *id.*, which

fendants are not entitled to summary judgment on State Farm Fire's claims because there remain significant gaps in the evidence and doubts as to the sufficiency of the proof of the relationship between State Farm Mutual and State Farm Fire.

D. *There Is a Genuine Issue of Material Fact as to Whether Defendants Are Covered by the Release*

Each Defendant argues that it is one of Rennard Inc.'s heirs, executors, administrators, successors, assigns or one of its past or present officers, directors, employees, agents or representatives, and thus is covered by the release. Rennard P.C. contends that it is a successor-in-interest to Rennard Inc. Joseph and Lana Mandale, Nora Faynberg, and Alex Tarnopolsky all contend that they are past or present officers, directors, or employees of Rennard Inc. Defendants point to board of director minutes, their own affidavits, and records filed with the Pennsylvania Department of State to support these arguments.

Plaintiffs, on the other hand, contend that Rennard Inc. continues to exist, in spite of Defendants' evidence to the contrary. For this proposition, Plaintiffs point to two pieces of evidence: Rennard Inc. was represented by counsel and agreed to a settlement in the *Makris* case in 2003, and Rennard Inc. entered an appearance in this case in 2006. If Rennard Inc. continued to exist and continued to be owned by Joseph Mandale (with whom attorney Medway dealt during his repre-

sentation of Rennard Inc. in the *Makris* case), then it is unclear how Faynberg or Tarnopolsky were ever owners of Rennard Inc. Indeed, at a time when, according to Defendants, Tarnopolsky was supposed to be the sole owner of Rennard P.C. (the alleged successor-in-interest to Rennard Inc.), Joseph Mandale was apparently still the owner of Rennard Inc. and gave the final approval for the settlement with State Farm Mutual.

In short, whether each Defendant is one of Rennard Inc.'s heirs, executors, administrators, successors, assigns or one of its past or present officers, directors, employees, agents or representatives is a genuine issue of material fact, and thus inappropriate for determination on summary judgment.

## III. CONCLUSION

Defendants' motions for summary judgment (doc. nos. 156 and 158) will be denied. First, the language defining the scope of the release remains ambiguous, and must therefore be considered by the factfinder at the conclusion of trial. Second, there is a genuine issue of material fact as to whether State Farm Fire is related to State Farm Mutual in such a way as to be covered by the release. Finally, there is a genuine issue of material fact as to whether Defendants are related to Rennard Inc. in such a way as to be covered by the release.

An appropriate order follows.

---

is asserted in Defendants' motion and supporting legal memorandum—*not* in the "pleadings, depositions, answers to interrogatories ... admissions on file ... [or] affidavits," as required by Federal Rule of Civil Procedure 56(c). *See Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1367 n. 9 (3d Cir.1996) (holding that "arguments made in legal memoranda are not evidence" to be

considered in deciding a summary judgment motion); *see also* Fed.R.Civ.P. 56(e) (burden only shifts to non-movant after "motion for summary judgment is made and *supported as provided in this rule*" (emphasis added)). Defendants point to *no evidence* in any pleadings, depositions, answers to interrogatories, admissions on file, or affidavits to support their position.

## ORDER

**AND NOW,** this **27th** day of **November, 2007,** for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Defendants Alexander Tarnopolsky and Rennard Health Care, P.C.'s motion for summary judgment (doc. no. 156) is **DENIED.**

It is further **ORDERED** that Defendants Joseph Mandale, Lana Mandale, and Management Services of PA, Inc.'s motion for summary judgment (doc. no. 158) is **DENIED.**

**AND IT IS SO ORDERED.**