# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Housing Authority of the City of Pittsburgh      :
:
:
     v.                :    No. 1200 C.D. 2022
:    ARGUED: October 10, 2023
Darlene Nash,                :
           Appellant    :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED: November 20, 2023**

Tenant, Darlene Nash, appeals from an order of the Court of Common Pleas of Allegheny County denying her motion for post-trial relief following a non-jury verdict in favor of the Housing Authority of the City of Pittsburgh that awarded possession of the property in which she resides, 1483 Chicago Street, #946, Pittsburgh, Pennsylvania (the Unit), to the Authority. This case originated with a fatal shooting in the Unit during the course of Tenant's open-house party. The trial court concluded that a juvenile male attendee (Shooter) was a covered person under the parties' rental lease agreement (Lease) thereby making Tenant responsible for his behavior and warranting her eviction. Having construed the pertinent provisions of the Lease and reviewed the record, we reverse.[1]

---

[1] This Court granted Tenant's application for stay pending the final disposition of her appeal. Mem. and Order, *Housing Auth. of the City of Pittsburgh v. Darlene Nash* (Pa. Cmwlth., No. 1200 C.D. 2022, filed March 31, 2023).

In January 2021, Tenant was celebrating her fifty-ninth birthday at a party that she and several of her friends had organized. "There were no formal or explicit invitations extended." June 8, 2022 Trial Ct. Op. at 3; Reproduced Record (R.R.) at 69.[2] "[R]ather, word of mouth and impromptu social media announcements sufficed such that [Tenant's] friends and neighbors became aware of the gathering and came to share their greetings and enjoy snacks and refreshments." *Id*. at 8; R.R. at 74. "[N]umerous people attended the party, some staying for only a short time while others lingered on for a longer period." *Id*. at 3; R.R. at 69. "[N]obody who entered the [Unit] during the time of the party was unwelcome or asked to leave, with the exception of [Victim.]" *Id*. at 4; R.R. at 70. Tenant asked him to leave "because he was starting with somebody[.]" May 25, 2022 Hr'g Tr., Notes of Test. (N.T.) at 88; Suppl. Record (S.R.) at 89.[3] Approximately twenty minutes later, Tenant told him that the party was over and that she was cleaning up. *Id*. When Victim was in the process of departing at about 10:30 p.m., Shooter shot and killed him. Trial Ct. Op. at 4; R.R. at 70. Despite being grazed by one of the bullets, Tenant "arranged for [Victim's] body to be removed from [the] [U]nit, fearing that the shooting would lead to her eviction." *Id*. Surveillance video revealed individuals dragging Victim outside of the Unit and fleeing the scene before police arrived. In addition, the police recovered bullet casings and slugs from inside the living room.

Upon investigation, Tenant acknowledged that she had known Shooter "as a kid through his mother and father[,]" that he was acquainted with her

---

[2] Our citations to the Reproduced Record reference the page numbers of the PDF document submitted by Tenant, as the document is not properly paginated in accordance with Pennsylvania Rule of Appellate Procedure 2173, Pa. R.A.P. 2173.

[3] Our citations to the Supplemental Record reference the page numbers of the PDF document submitted by the trial court.

grandchildren, and that he had eaten food in her house. N.T. at 82; S.R. at 83. She testified that "[e]verybody else would [also] ask what [she] cooked today." *Id.* She noted that "when you in Northview, mostly everybody know everybody. Like I said, I was there 20 years prior to the four years. And as far as young people, they call you aunt or uncle." *Id.* at 81; S.R. at 82.

Turning to the summer of 2020, Tenant stated that Shooter started hanging out with his cousin in her court and that she saw him there regularly even though he did not live in the complex. *Id.* at 77, 80; S.R. at 78, 81.

> He was in the neighborhood. He was in my court with the other guys that be up there. . . . [I]n the summer . . . , we had teenage girls on both sides of me. So we see girls. We see boys.

*Id.* at 78; S.R. at 79. She testified that her next-door neighbor was Shooter's girlfriend, that he was over there every day, and that he had a baby with her. *Id.* at 75-82; S.R. at 76-83. She acknowledged that she might have permitted Shooter to take a shower at her house at least once and that she had also stored a bag for him in early fall when the couple had an argument.[4] *Id.* at 82-83; S.R. at 83-84.

A tenant of the Authority is obligated to assure that no "Covered Person" engages in "[a]ny criminal activity on or off the Premises that threatens the health, safety, or right to peaceful enjoyment of any [Authority] community by members of the Household, Guests, other Tenants or employees of [the Authority], or persons residing in the immediate vicinity of the Premises." May 4, 2017 Lease ¶9(K); R.R. at 20. A material breach of the Lease and grounds for termination

---

[4] When Tenant found the bag upon cleaning out her basement, she voluntarily turned it over to the police. N.T. at 82-83; S.R. at 83-84. She testified that the bag contained a jacket, some bullets, and a picture of another girlfriend. *Id.*

3

thereof occurs "if any 'Covered Person' does any of the following in the Unit or on the Premises: . . . (2) [s]hoot, fire, explode, throw, or otherwise discharge a potentially deadly weapon[.]" *Id*. ¶9(M); R.R. at 20. In addition, a tenant is obligated to assure that "no Covered Person acts in a manner which will disturb other [t]enants' peaceful enjoyment of their accommodations or community facilities and further, that Covered Person will act in a manner which is conducive to maintaining the [Authority] communities, the Unit and/or the Premises in a decent, safe, and sanitary condition." *Id*. ¶9(N); R.R. at 21.

At all events, pursuant to the theory that Shooter was a "covered person" ("Other Person Under the Tenant's Control") and that he had committed a crime in violation of the Lease's provisions pertaining to "criminal activity" and "discharge of a potentially deadly weapon," the Authority served Tenant with a March 2021 "Lease Termination/Vacate Notice." When Tenant did not vacate the Unit, the Authority instituted an eviction proceeding in April 2021 that resulted in the magisterial district court granting the eviction request. Following Tenant's appeal, the Authority filed a complaint that resulted in an August 2021 arbitration ruling in the Authority's favor. Once again, Tenant appealed. In May 2022, the trial court held the non-jury trial at issue at which time both sides presented evidence. In June 2022, the trial court entered a verdict in the Authority's favor. Following the denial of Tenant's post-trial motion, Tenant appealed to this Court.[5]

On appeal, Tenant argues that the trial court erred in determining that her decision to host an open-house party to which all were generally welcome made Shooter a "Covered Person" ("Other Person Under Tenant's Control"), thereby creating what was tantamount to strict liability for Tenant and a breach of the Lease

---

[5] In January 2023, the trial court entered judgment in favor of the Authority.

in the event that any of the attendees engaged in criminal conduct. In addition, Tenant contends that the record lacks evidence that she invited Shooter to the Premises, which she maintains is required to make him a Covered Person under her control. She points out that the trial court never rendered a specific finding of fact to that effect.

In determining whether the shooting violated the Lease, the trial court analyzed what it characterized as sets of nesting definitions. Turning first to the definitions classifying people, the trial court concluded that the shooting had to be committed by a "Covered Person," i.e., a "Tenant, any member of Tenant's Household, a Guest or Other Person under the Tenant's Control, as these terms are respectively defined below." Lease ¶2(C); R.R. at 11. Determining that Shooter was neither a member of Tenant's household nor her guest,[6] the trial court concluded that Shooter was an "Other Person under the Tenant's Control." That phrase is defined as "a person, although not living as a Guest in the Unit who is, or was at the time of the activity in question on the Premises, as defined below, because of an invitation from Tenant or another member of the Household . . . ." *Id*. ¶2(L); R.R. at 11-12.

The trial court then turned to the relevant definitions pertaining to locations. "Premises" is defined as "the building, or complex, or development in which the Unit, as defined below, is located, including Common Areas and grounds."' *Id*. ¶2(M); R.R. at 12. "Unit" is defined as "the dwelling space intended for the exclusive use of and occupation by the Household. The Unit shall include

---

[6] The Lease lists Tenant as the head of household and two other females as members of that household. Lease ¶1(C); R.R. at 10. "Guest" is defined as "a person temporarily living in the Unit with the consent of the Tenant or other member of the Household who has express or implied authority to consent on behalf of Tenant." *Id*. ¶2(I); R.R. at 11.

5

any steps, porch, hallway, lawn, or yard adjacent to and reasonably considered to be part of the dwelling space." *Id*. ¶2 (R); R.R. at 12.

Characterizing Tenant's birthday party as an open house, to which any and all were invited, including Shooter, the trial court construed the words "Premises" and "Unit" as synonymous terms. In so doing, the trial court rejected Tenant's assertion that there was no reason to believe that Shooter was on the Premises because of her invitation, as opposed to an invitation from his girlfriend, Tenant's next-door neighbor, and that it was impossible to discern whether a person moving among multiple residences at the complex would shift from being an "Other Person under the Tenant's Control" under one tenant's lease and become that person under another's lease thereby transferring liability. Trial Ct. Op. at 8; R.R. at 74. Instead, the trial court concluded that Tenant "having opened her doors (literally or metaphorically) to anyone who would show up . . . assumed the risk of those guests' misbehavior." *Id*. at 9; R.R. at 75. Nonetheless, the trial court emphasized that "[t]he Court does not mean to suggest that [Tenant] in any way knew about [S]hooter's intent to injure or kill [Victim] and other partygoers, or was in any way complicit." *Id*.

As an initial matter, we do not find the Lease provisions at issue to be ambiguous.[7] The Authority had to establish that, at the time of the shooting, Shooter was *on the Premises* because of an invitation from Tenant. As noted, the Lease defines "Other Person under the Tenant's Control" as "a person, although not living as a Guest in the Unit who is, or was at the time of the activity in question on the Premises, as defined [in the Lease,] because of an invitation from Tenant or another

---

[7] Nonetheless, when doubt arises as the result of uncertainty concerning the meaning of language used in a lease, its provisions should be construed most strongly in favor of the non-drafting party. *Burns Mfg. Co. v. Boehm*, 356 A.2d 763, 766 n.3 (Pa. 1976).

6

member of the Household . . . ." Lease ¶2(L); R.R. at 11-12. "Premises" is defined as "the building, or complex, or development in which the Unit, as defined below, is located, including Common Areas and grounds." *Id.* ¶2(M); R.R. at 12. "Unit" is defined as "the dwelling space intended for the exclusive use of and occupation by the Household. The Unit shall include any steps, porch, hallway, lawn, or yard adjacent to and reasonably considered to be part of the dwelling space." *Id.* ¶2(R); R.R. at 12.

We conclude that the trial court improperly conflated the definitions of "Premises" and "Unit." As this Court recognized in granting Tenant's application for stay pending the final disposition of her appeal, the terms have different definitions. An invitation to enter a Unit is not the same as an invitation to enter the Premises. The fact that Shooter was present in the Unit at the time of the activity in question does not place him on the Premises pursuant to Tenant's invitation. While it is true that Tenant permitted Shooter to enter the Unit and attend her party, that does not equate to an invitation to the Premises.

Further, the trial court erred in determining that the open nature of Tenant's party was sufficient to establish that Shooter constituted an "Other Person under the Tenant's Control" in the absence of evidence that Tenant invited Shooter to the Premises. As we determined: "[T]he record lacks any evidence that [Tenant] or a member of her household invited the [Shooter] to the building complex." Mem. and Op., *Housing Auth. of the City of Pittsburgh v. Darlene Nash* (Pa. Cmwlth., No. 1200 C.D. 2022, filed March 31, 2023), slip op. at 5-6. To that end, even though there is no clear evidence that Shooter was on the Premises due to his girlfriend's invitation, the record is devoid of evidence that Tenant invited Shooter to the Premises. In fact, the open nature of the event, which admittedly was not restricted

7

by individual invitations, actually made it less likely that Shooter was on the Premises due to Tenant's invitation, particularly since the mother of his baby lived next door. Consequently, the trial court's determination that Shooter was an "Other Person under the Tenant's Control" because Tenant's guest list was relaxed is inconsistent with the plain language of the Lease.

Moreover, the Lease does not support the theory that a person's movement from one unit to another changes the identity of the one who invited the person to the Premises. In other words, the Lease does not provide that when a person is on the Premises at the invitation of tenant-A but then goes to tenant-B's unit, that person becomes the responsibility of tenant-B. Under the Lease, the word Premises is not synonymous with Unit and a Unit's presence on the Premises does not equate one with the other. There is simply no provision in the Lease providing that remaining or staying on the Premises but going to a different unit undoes the initial invitation to the Premises, if any. In other words, an invitation to enter a Unit is not an invitation to remain on the Premises. In sum, there is no evidence that Tenant invited Shooter to the Premises even if Tenant's open invitation caused him to go into the Unit.

Accordingly, we reverse.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Housing Authority of the City of     :
Pittsburgh                           :
                                   :
             v.               :     No. 1200 C.D. 2022
                                   :
Darlene Nash,                 :
                Appellant    :

# O R D E R

AND NOW, this 20th day of November, 2023, the order of the Court of Common Pleas of Allegheny County is hereby REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita