J-A03026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORP. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID BEMIS, CHRISTOPHER MICHAEL MCDANNEL, SR., GEORGE WILLIAM MCDANNEL, III., AND TIFFANY BEMIS | : | |
| | : | |
| APPEAL OF: DAVID AND TIFFANY BEMIS | : | No. 381 WDA 2023 |

Appeal from the Order Entered March 3, 2023
In the Court of Common Pleas of Warren County Civil Division at No(s):
No. 596 of 2019

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: May 3, 2024**

In this dispute over the ownership of real property, Defendants, David and Tiffany Bemis, appeal from the order granting summary judgment to the Federal Home Loan Mortgage Corp. ("Freddie Mac") and ejecting the Bemises from the residence. Based on the reasons below, we affirm.

Mr. Bemis ("Father") and his wife, Kathleen Bemis ("Mother"), lived with and cared for Tiffany their adult Daughter.[1] In 1998, they moved into the property, although Mother's parents owned it. Mother also had two, independent adult Sons, Christopher Michael McDannel, Sr. and George William McDannel, III.

---

[1] A guardian *ad litem* represented Daughter because of her cognitive issues and inability to read, write, and speak.

By 2005, Mother held an undivided, one-half interest in the property, along with her parents and another relative. Then, on October 27, 2006, Mother acquired sole title to the property in two deeds. ***See*** Winne-to-Bemis Deed, *recorded*, Warren County Deed Book, Vol. 1642 at 242; ***see also*** Cooper-to-Bemis Deed, *recorded*, Warren County Deed, Vol. 1642 at 246. Both deeds granted Mother the grantors' separate, "***undivided one-half interest in***" the property. Trial Court Opinion, 3/3/23, at 4 (quoting ***id.***) (emphasis added). Thus, when construed together, the two deeds granted Mother the fee simple.

Shortly thereafter, Mother mortgaged the property with Countrywide Home Loans, Inc. as security for a $96,800 loan. During the mortgage-approval process, Countrywide hired an appraiser to estimate the worth of the property in "Fee Simple." Nancy Higby's Residential Appraisal Report, 11/15/06, at 1. Ms. Higby estimated the market value of the whole property to be $123,161. ***See id.*** at 3. Thus, the loan was for 78% of the fair market value of the property. Countrywide also did a title search and learned that Mother was the sole owner of the entire property.

Daniel Murrieta, an employee of Countrywide, prepared the mortgage documents. According to the documents, Mother agreed to "mortgage, grant and convey to [Countrywide] and to [its] successors and assigns . . . property located in the COUNTY of WARREN: SEE EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF." Mortgage at 4, *recorded*, Warren County Deed Book, Vol. 1663 at 177 (capitalization in original).

Exhibit A described the property as:

> ***All the undivided one-half interest*** in that certain piece or parcel of land [by meets and bounds of prior deeds] containing 24 acres and 40 rods of land . . . .

*Id.* at 19 (emphasis added; some capitalization removed). Exhibit A referred to the Winne-to-Bemis Deed and the Cooper-to-Bemis Deed as "Fee Simple Deed[s]" from grantors to Mother. *Id.*

Eight years later, in November of 2014, Mother died without a will. No one raised an estate, and the parties agree Mother's interest in the property passed to Father, Daughter, and her two Sons. *See* Amended Complaint at 7 ¶ 27; *see also* Answer at 3 ¶ 27. Father and Daughter continued living at the property; Sons did not.

Thereafter, Countrywide assigned the mortgage to M&T Bank. On February 1, 2016, Mother's heirs defaulted, and M&T Bank foreclosed on the property. *See id.* at ¶¶ 28-29; *see also **M&T Bank v. Bemis***, No. 2016-00038 (C.C.P. Warren 2016) (entering default judgment in favor of M&T Bank and against the Bemises).

At M&T's direction, the Sheriff of Warren County executed a deed that conveyed "all the undivided one-half interest in" the property to Freddie Mac. Sheriff-to-Freddie-Mac Deed at 1, *recorded*, Warren County Deed Book, Vol. 2608 at 72. That deed further described the property as "being the same property conveyed to" Mother in the Winne-to-Bemis and Cooper-to-Bemis

Deeds. *Id.* Since receiving and recording that deed, Freddie Mac has paid all of the real-estate taxes for the property.

Despite M&T's foreclosure action and despite not paying the real-estate taxes, Father and Daughter (collectively, "the Bemises") refused to leave a mobile home located on the property.[2] In the Bemises' view, the Sheriff-to-Freddie-Mac Deed only granted Freddie Mac a half interest in the property, while they retained title to the other half interest, because that was the language that Countrywide used to describe the property in the Mortgage's Exhibit A. Thus, the Bemises believed they had become co-owners of the property with Freddie Mac.

On January 25, 2019, Freddie Mac sued the Bemises and Mother's Sons. The Complaint raised counts for (1) Equitable Reformation of the Sheriff-to-Freddie-Mac Deed to strike the phrase "all the undivided one-half interest," (2) Quite Title, (3) Ejectment of Father and Daughter, (4) Equitable Lien, and (5) Declaratory Judgment.

Sons filed no response to the Complaint and have not participated in the litigation. The Bemises filed an Answer & New Matter contending that Mother mortgaged an undivided, one-half interest in the property to Countrywide, as reflected in the language of the Mortgage. In turn, the Sheriff-to-Freddie-Mac Deed granted Freddie Mac a co-tenancy interest in the property with Mother's

---

[2] There was a permanent residence on the land, but no one lived there due to a black-mold infestation.

heirs. Hence, the Bemises asserted that they had retained an undivided, one-half interest in the property.

They also raised an affirmative defense that they no longer owed on the Mortgage. They based that claim on an IRS Form 1099-C, titled "Cancellation of Debt." Freddie Mac sent this form to the Bemises nearly two months after the sheriff's sale. Answer & New Matter at 8 ¶ 93, Exhibit C. The form indicated that the debt of $93,331.48 was discharged. ***See id.***

When Freddie Mac deposed Father, he was asked whether Mother "would have intended to mortgage the whole property," as opposed to an undivided, one-half interest. Father's Deposition, 10/29/21, at 19. Father agreed she would have mortgaged the entire property.

On January 5, 2023, Freddie Mac filed a motion for summary judgment. To understand the parties' competing claims, we describe Freddie Mac's arguments and the Bemises' replies in detail.

First, Freddie Mac argued the Bemises' interpretation of the Mortgage and sheriff's deed was absurd and contrary to the clear intent of Mother and Countrywide. It claimed Countywide could not possibly have allowed Mother to mortgage a half-interest in the property, because every mortgagee wishes to foreclose on a fee simple so as to sell the property quickly. "But a mortgage on an undivided, half interest [would make] re-sale of the property impossible after foreclosure, without first successfully prosecuting a separate action for partition." Freddie Mac's Motion for Summary Judgment at 16. According to

Freddie Mac, no "mortgage lender would intend" the result that the Bemises advanced in their Answer. *Id.*

Freddie Mac also believed Father's admission during his deposition that Mother intended to encumber the whole property would be admissible at trial. *See id.* Finally, it argued that the tax document (IRS Form 1099-C), which the Bemises raised as an affirmative defense, was irrelevant and inadmissible. *See id.* at 18-19. Based on the above, Freddie Mac requested summary judgment on its counts for declaratory judgment, quiet title, and ejectment.

Alternatively, it requested summary judgment based on the counts for equitable reformation and equitable lien. *See id.* at 19-24. As to equitable reformation, Freddie Mac contended the phrase "all the undivided one-half interest in" the property appeared in the Mortgage and sheriff's deed by either mutual mistake or scrivener's error.

Lastly, if Freddie Mac was a co-tenant of the property, it urged the court to impose an equitable lien against the heirs' half interest. Freddie Mac claimed that the heirs admitted they directly benefited from Countrywide's $96,000.00 loan to Mother. Also, Freddie Mac paid all the real-estate taxes on the property since the sheriff's sale, and the heirs paid nothing. Thus, equity required a $79,529.66 lien on the heirs' half interest in the property.

The Bemises replied to Freddie Mac's motion. They identified four issues of material fact that, in the Bemises' minds, required a trial. First, they argued that the 1099-C created a genuine issue of material fact. *See* Reply to Motion for Summary Judgment at 1-3. Second, they challenged the claim of a mutual

mistake in the creation of the Mortgage and, by extension, the sheriff's deed. *See id.* at 3-5. The Bemises argued that there was no mutual mistake, but only a unilateral mistake by Countrywide. *See id.* at 3. Critically, in their reply, the Bemises did not address the claim of scrivener's error. *See id.*

Third, they suggested that there was a genuine issue of material fact as to who owned the property, because it was "necessary to examine the various deeds in light of the laws of conveyance . . . ." *Id.* at 5. After a lengthy review of the deeds that resulted in Mother acquiring a fee simple, the Bemises believed there was a genuine issue of material fact as to whether "M&T Bank or [Freddie Mac] realized that the Mortgage only encumbered the 24 acres and 40 rods and that [Mother] had been discharged in bankruptcy" and that Freddie Mac issued a 1099-C. *Id.* at 8.

Fourth, the Bemises argued that Freddie Mac's motion violated *Nanty-Glo v. American Surety Co. of New York*, 163 A.3d 532 (Pa. 1932), by relying on Father's deposition testimony. *See id.* at 8. Further, they contended Father's opinion as to Mother's intent was "completely irrelevant and would violate the Dead Man's Rule." *Id.* at 9.

Three days later, the Bemises filed a Supplement to the Reply to Motion for Summary Judgment claiming that Freddie Mac failed to follow Pennsylvania Rules of Civil Procedure 3132 and 3135.

After oral argument, the trial court issued a March 3, 2023 Opinion and Order granting summary judgment to Freddie Mac on its counts for quiet title, ejectment, and declaratory judgment. The trial court held that no reasonable

finder of fact could conclude that Countrywide would accept a mortgage from Mother on an undivided, one-half interest in the property, rather than the full interest she actually owned. Therefore, the court ruled that, as a matter of law, Mother mortgaged the entire property. By extension, the Sheriff-to-Freddie-Mac Deed conveyed the fee simple, because Mother mortgaged the entire property. As such, the court did not reach Freddie Mac's counts for equitable reformation of the deed and equitable lien. The Bemises appealed.

They raise four appellate issues as follows:

1. Did the trial court err in granting summary judgement in favor of [Freddie Mac] on the theory of mutual mistake or scrivener's error?

2. Did the trial court err in failing to address the discharge of the debt by [Freddie Mac] by the issuance of a 1099-C to the Estate of [Mother]?

3. Did the trial court err in utilizing the oral testimony of [Father] to support the granting of summary judgement on the issue of mutual mistake and scrivener's error in the description of the real estate [Mother] had no part in preparing the mortgage which led to the foreclosure action?

4. Did the trial court err in permitting an untimely challenge of the validity of the sheriff's deed issued to the mortgage foreclosure contrary to Pa.R.C.P. 3132 and 3135(a)?

Bemises' Brief at 6. We dispose of each issue in turn.

*1.    Mutual Mistake or Scrivener's Error*

First, the Bemises contend the trial court erroneously granted summary judgment based on either a mutual mistake or a scrivener's error. They assert that either occurrence presents a genuine issue of material fact. According to the Bemises, "to establish a mistake, mutual or unilateral, testimony is

required." ***Id.*** at 13. They claim Mr. Murrieta, an employee of Countrywide Home Loans, Inc., negligently drafted the mortgage and therefore committed a unilateral mistake, for which the remedy of reformation of the Mortgage and the sheriff's deed is unavailable. ***See id.*** at 14-15.

Initially, we observe that the trial court did ***not*** hold, as a matter of law, that Mother and Countrywide made a mutual mistake when they contracted for Mother to mortgage the property. Instead, the trial court held, as a matter of law, that the inclusion of the phrase "all the undivided one-half interest" appeared in the Mortgage and the sheriff's deed due to a scrivener's error.

The court explained its grant of summary judgment as follows:

"The language of the instrument should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." ***Daddona v. Thorpe***, 749 A.2d 475, 487 (Pa. Super. 2000) . . . it is the opinion of this court that [Countrywide] would have acted with due diligence by doing a title search . . . to determine whether [Mother] had a clear title in fee simple in order to obtain a mortgage. It is very unlikely . . . that [Countrywide] agreed to a mortgage on "an undivided one-half interest" parcel of land owned by [Mother]. It is clear to the Court, after examining the deeds that were entered as exhibits by [Freddie Mac], that the legal description attached to the Mortgage and later the sheriff's deed was an unintended ***error***.

. . . The introductory phrase "all the undivided, one-half interest in" . . . the property, attached to the Mortgage and to the sheriff's deed is surplusage, inadvertently carried forward from prior instruments in the chain of title of the property which were given when a co-tenancy existed.

Trial Court Opinion, 3/3/23, at 4-5 (emphasis added).

In other words, the trial court determined, as a matter of law, Mother and Countrywide did not intend to include the phrase "all the undivided one-half interest" in the Mortgage's Appendix A. Hence, in the trial court's opinion, the contracting parties did not make a mutual mistake at the time they created the mortgage. Instead, Mr. Murrieta had merely made a scrivener's error. Thus, any claim by the Bemises that the trial court erred by granting summary judgment on the basis of mutual mistake is incorrect; the trial court made no such holding. Hence, we dismiss the Bemises' claim of error based on mutual versus unilateral mistake as procedurally incorrect, nonresponsive to the trial court's opinion, and moot.

We now turn to the claim that the trial court erroneously held, as a matter of law, that the phrase "all the undivided one-half interest in" appeared in the Mortgage (and, by extension, sheriff's deed) as a result of a scrivener's error. Regarding this argument, Freddie Mac contends the Bemises committed waiver, because they failed to raise it in their reply to the motion for summary judgment. *See* Freddie Mac's Brief at 25-26. We agree.

"The applicability of waiver principles presents a question of law, over which our standard of review is *de novo*, [and] our scope of review is plenary." *Temple Est. of Temple v. Providence Care Ctr., LLC*, 233 A.3d 750, 760 (Pa. 2020). "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

As previously stated, Freddie Mac moved for summary judgment, in part, based on a claim that reasonable minds could not differ as to whether

Mr. Murrieta made a scrivener's error when preparing the Mortgage. It argued that no rational lender would ever desire or accept a mortgage on anything less than a fee simple, where, as here, the mortgagor owned the fee simple. Thus, Freddie Mac claimed that no reasonable fact finder could come to any conclusion other than the phrase "all the undivided one-half interest in" was accidently copied from the prior deeds in the chain of title.

In their answer to the Motion for Summary Judgment, the Bemises offered no counterargument against Freddie Mac's claim of a scrivener's error. **See** Reply to Motion for Summary Judgment at 3-5. As the non-moving party, the Bemises needed to identify for the trial court any genuine issues of material fact, including the issue of a scrivener's error. Rule of Civil Procedure 1035.3(a)(1) provides that the non-moving party "may not rest upon the mere allegations or denials of the pleadings but must file a response [to] the motion identifying [the] issues of fact arising from evidence in the record controverting the evidence cited in support of the motion . . . ." Pa.R.C.P. 1035.3(a)(1).

Here, the Bemises offered no response to the scrivener's error claim at the trial court. Therefore, they conceded that no such error occurred. Accordingly, the Bemises may not claim for the first time on appeal that a general issue of material fact exists regarding whether Mr. Murrieta made a scrivener's error. **See** Pa.R.A.P. 302(a). We dismiss this portion of the Bemises' argument as waived.

Hence, the Bemises' first appellate issue affords them no relief.

2.      *The IRS Cancellation of Debt Form*

Next, the Bemises claim the trial court erred by failing to consider the IRS Form 1099-C for Cancellation of Debt, which they raised as an affirmative defense in their Answer & New Matter.  They contend that, by discharging the debt, Freddie Mac cannot maintain an action in mortgage foreclosure.  ***See*** Bemises' Brief at 17.  In their view, the Mortgage was a lien upon the property "as security for the debt which no longer exists.  If the debt is gone, so is the lien." ***Id.***

This argument is moot.  M&T Bank's mortgage-foreclosure case against the Bemises became final in 2016, when M&T Bank secured a default judgment against the Bemises.  ***See M&T Bank***, ***supra***.  By not opposing the mortgage-foreclosure action, they forfeited this defense.

Moreover, Freddie Mac is not seeking to collect a debt in this case from the Bemises; it is seeking to eject them from the property.  Therefore, even if the Bemises had not forfeited this defense, it is irrelevant to the causes of action at bar.  Hence, the trial court committed no error by failing to address the Bemises' this theory when it granted summary judgment to Freddie Mac.

3.      *Father's Deposition Testimony*

For their third issue, the Bemises ask whether the trial court erroneously relied upon Father's admission that Mother intended to mortgage the entire property.  However, they elected not to develop an argument in support of this claim of error.  ***See*** Bemises' Brief at 18.

This Court may "not develop an argument for an appellant . . . instead, we will deem the issue to be waived." ***Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 884–85 (Pa. Super. 2019), *appeal denied*, 221 A.3d 644 (Pa. 2019). Thus, we dismiss the Bemises' third appellate issue as waived.

*4.     Rules 3132 and 3135 of Civil Procedure*

For their final issue, the Bemises contend the trial court failed to apply Pennsylvania Rules of Civil Procedure 3132[3] and 3135[4] to Freddie Mac's

_____

[3] "Upon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances." Pa.R.C.P. 3132.

[4] "(a) When real property is sold in execution and no petition to set aside the sale has been filed, the sheriff, at the expiration of twenty days but no later than 40 days after either the filing of the schedule of distribution or the execution sale if no schedule of distribution need be filed, shall execute and acknowledge before the prothonotary a deed to the property sold. The sheriff shall forthwith deliver the deed to the appropriate officers for recording and for registry if required. Confirmation of the sale by the court shall not be required.

> *Note:*   ***See*** Rule 3136(a) governing the filing of the schedule of distribution.

(b) If the sheriff has made a defective return of the execution proceeding or has executed a defective deed, including the erroneous description of the real estate, the court upon petition of the purchaser or the purchaser's successors in title may correct the return or deed or order that a new return or deed be executed.

(c) If the plaintiff has failed to give notice to a lienholder, junior in lien priority to the mortgage being foreclosed upon or the judgment being executed, the plaintiff, or its assigns, or the purchaser at the sheriff's sale may file a petition with rule to show cause requesting that:
*(Footnote Continued Next Page)*

"untimely challenge of the validity of the sheriff's deed." Bemises Brief at 19. Notably, they then concede that Freddie Mac was **not** challenging the validity of the sheriff's deed, but rather sought "reformation of [the] sheriff's deed alleging scrivener's error or mutual mistake . . . ." **Id.** The Bemises then discuss the steps for setting aside a sheriff's sale and for reforming a deed. **See id.** at 19-23.

The Bemises' procedural argument concerning Rule 3132 is irrelevant, because Freddie Mac did not ask the trial court to set aside the sheriff's sale. Nor would it have made sense for Freddie Mac to seek such a remedy, because it was the beneficiary of the sheriff's sale.

Additionally, Rule 3135 does not apply to the procedural posture of this appeal, because the trial court did not rule on Freddie Mac's alternative count for equitable reformation of the sheriff's deed. Instead, the court ruled, as a matter of law, that Mother mortgaged the entire property to Countrywide. Hence, M&T Bank foreclosed on the entire property, and the sheriff's deed

_____

(1) the lien held by the junior lienholder be divested, or

(2) if the plaintiff, or its assigns, is the purchaser at the sheriff's sale, another sheriff's sale be held in which only the junior lienholder specified in the petition may be the only bidder allowed other than the senior lienholder who acquired the property at the sheriff's sale, or

(3) such relief as may be approved by order of court.

Pa.R.C.P. 3135.

- 14 -

conveyed the fee simple to Freddie Mac. Thus, the court granted ***declaratory judgment*** to Freddie Mac that the deed, in its original form, conveyed the entire property to Freddie Mac; ***quieted title*** as being fully vested in Freddie Mac; and ***ejected*** the Bemises from the property. Any argument that the trial court should have denied summary judgment on the count for equitable reformation of the deed is moot, because the trial court did not grant summary judgment on that basis.

Therefore, the Bemises' fourth and final issue warrants no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/03/2024